## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MALLINCKRODT PLC, *et al.*,[1] | : | Case No. 20-12522 (JTD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

----------------------------------------------------------- x

| | | |
|---|---|---|
| MALLINCKRODT PLC, | : | |
| | : | |
| Plaintiff, | : | Adv. Pro. No. 21-50242 (JTD) |
| | : | |
| v. | : | Re:  Adv. D.I. 1 & 2 |
| | : | |
| THE BUXTON HELMSLEY GROUP, INC. and ANTHONY E. PARKER, | : | |
| | : | |
| Defendants. | : | |

----------------------------------------------------------- x

## OPENING BRIEF IN SUPPORT OF MALLINCKRODT PLC'S
## MOTION FOR A TEMPORARY RESTRAINING ORDER

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt.  The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDING ......................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 2

STATEMENT OF FACTS ........................................................................................... 6

    A.    BHG seeks equity committee but Court determines no value for equity. ............... 6

    B.    BHG and Parker launch an abusive and misleading campaign to threaten Mallinckrodt's reorganization. .................................................................................. 8

    C.    Defendants continue their abusive and illegal campaign with additional misleading solicitation materials ................................................................................ 10

    D.    Defendants reaffirm their "dedication to this initiative." ..................................... 11

    E.    Defendants continue to solicit proxies illegally. .................................................. 13

    F.    Defendants' illegal campaign continues with a public letter to the Mallinckrodt board .................................................................................................... 15

ARGUMENT ................................................................................................................. 15

I.    MALLINCKRODT IS LIKELY TO SUCCEED ON THE MERITS. ..................... 16

    A.    Defendants have blatantly violated Rule 14a-3(a) of the Exchange Act. ............. 17

    B.    Defendants' communications are false and misleading in violation of Rule 14a-9. ....................................................................................................................... 20

    C.    The Court should grant injunctive relief under Section 105(a) of the Bankruptcy Code. ....................................................................................................... 24

II.    MALLINCKRODT WOULD SUFFER IRREPARABLE HARM IN THE ABSENCE OF A TEMPORARY RESTRAINING ORDER. .................................... 26

III.    THE BALANCE OF EQUITIES FAVORS A TEMPORARY RESTRAINING ORDER. ........................................................................................................................ 30

IV.    A TEMPORARY RESTRAINING ORDER WILL SERVE THE PUBLIC INTEREST .................................................................................................................... 31

CONCLUSION ............................................................................................................. 32

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allergan, Inc.* v. *Valeant Pharm. Int'l, Inc.*,
No. SACV 14-1214 DOC ANX, 2014 WL 5604539 (C.D. Cal. Nov. 4, 2014) .........17, 27, 31

*Bender* v. *Jordan*,
439 F. Supp. 2d 139 (D.D.C. 2006) .................................................................................22, 27

*Citcon USA, LLC* v. *RiverPay Inc.*,
2019 WL 2603219 (N.D. Cal. June 25, 2019) .......................................................................30

*Diceon Elecs., Inc.* v. *Calvary Partners, L.P.*,
772 F. Supp. 859 (D. Del. 1991).............................................................................................27

*Fogel* v. *U.S. Energy Systems, Inc.*,
No. 3271, 2008 WL 151857 (Del. Ch. Jan. 15, 2008); .........................................................24

*Gen. Time Corp.* v. *Talley Indus., Inc.*,
403 F.2d 159 (2d Cir. 1968).....................................................................................................17

*Herskowitz* v. *Nutri/Sys., Inc.*,
857 F.2d 179 (3d Cir. 1988).....................................................................................................20

*In re Johns-Manville Corp.*,
801 F.2d 60 (2d Cir. 1986); .........................................................................................24, 25, 26

*In re Marvel Entm't Grp., Inc.*,
209 B.R. 832 (D. Del. 1997); .........................................................................................24, 25

*In re Midway Games, Inc.*,
428 B.R. 327 (Bankr. D. Del. 2010); .....................................................................................30

*In re Monroe Well Service, Inc.*,
67 B.R. 746 (Bankr. E.D. Pa. 1986) .......................................................................................30

*In re SS Body Armor I*,
527 B.R. 597 (Bankr. D. Del. 2015) .........................................................................24, 25, 26

*In re THG Holdings LLC*,
604 B.R. 154 (Bankr. D. Del. 2019) .........................................................................16, 30, 32

*In re W.R. Grace & Co.*,
412 B.R. 657 (D. Del. 2009).....................................................................................................16

ii

*Intercept Pharm., Inc.* v. *Fiorucci*,
  No. CV 14-1313-RGA, 2016 WL 6609201 (D. Del. Jan. 28, 2016) ......................................16

*Int'l Jensen Inc.* v. *Emerson Radio Corp.*,
  No. 96 C 2816, 1997 WL 43229 (N.D. Ill. Jan. 24, 1997) ...................................................17

*Kaufman* v. *Cooper Cos. Inc.*,
  719 F. Supp. 174 (S.D.N.Y. 1989).....................................................................................27

*Lane* v. *Page*,
  581 F. Supp. 2d 1094 (D.N.M. 2008) ...............................................................................21

*Lewis* v. *Gen. Emp. Enters.*,
  1991 WL 11383 (N.D. Ill. Jan. 21, 1991)...........................................................................30

*Lone Star Steakhouse & Saloon, Inc.* v. *Adams*,
  148 F. Supp. 2d 1141 (D. Kan. 2001) ...............................................................................23

*Mills* v. *Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970)............................................................................................................20

*Nowling* v. *Aero Servs. Int'l, Inc.*,
  734 F. Supp. 733 (E.D. La. 1990)......................................................................................31

*Reilly* v. *City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017) ..............................................................................................16

*SEC* v. *Am. Real Estate Inv. Tr.*,
  529 F. Supp. 1300 (C.D. Cal. 1982) ..................................................................................19

*Tootsie Roll Indus., Inc.* v. *Sathers, Inc.*,
  666 F. Supp. 655 (D. Del. 1987)........................................................................................14

*TSC Indus. Inc.* v. *Northway, Inc.*,
  426 U.S. 438 (1976)............................................................................................................20

## TREATISES, STATUTES & RULES

Dennis R. Honabach & Mark A. Sargent, *Proxy Rules Handbook* § 2:8 (2020-2021 ed.) ...........18

11 U.S.C. § 105...............................................................................................................................24

17 C.F.R. § 240.14a-3 ...............................................................................1, 4, 5, 17, 18, 19, 31

17 C.F.R. § 240.14a-9 ...............................................................................1, 5, 15, 17, 19, 20, 21, 22, 23, 17

iii

17 C.F.R. § 240.14a-12 ........................................................................................4, 10, 11, 12, 17, 19

iv

## NATURE AND STAGE OF THE PROCEEDING

On October 12, 2020 (the "**Petition Date**"), plaintiff Mallinckrodt plc and certain of its subsidiaries (the "**Debtors**") filed voluntary petitions in this Court commencing cases for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").  The Debtors are party to a pre-petition restructuring support agreement (the "**RSA**") that will be consummated through a plan of reorganization.  The restructuring contemplated by the RSA and to be implemented through the plan of reorganization fairly and equitably resolves all claims and enjoys significant support from stakeholders in these cases.

Contemporaneous with the filing of this brief (the "**Opening Brief**") and the accompanying *Mallinckrodt plc's Motion for Temporary Restraining Order* (the "**Motion**") and supporting *Declaration of M. Viola So in Support of Mallinckrodt plc's Motion for Temporary Restraining Order* (the "**LW Declaration**"), *Declaration of Randall Eisenberg in Support of Mallinckrodt plc's Motion for Temporary Restraining Order* (the "**Eisenberg Declaration**"), *Declaration of Stephen Ranalow in Support of Mallinckrodt plc's Motion for Temporary Restraining Order* (the "**Ranalow Declaration**"), plaintiff Mallinckrodt plc ("**Mallinckrodt**" or the "**Company**") has also filed its *Adversary Complaint* [Adv. D.I. 1] (the "**Complaint**") against The Buxton Helmsley Group ("**BHG**") and Alexander E. Parker, seeking, *inter alia*, (a) an injunction barring defendants and their agents and attorneys from submitting, or claiming in any way to use, any meeting requisitions, shareholder proxies, or any other form of purported authorization from Mallinckrodt shareholders procured in violation of Section 14(a) of the Exchange Act and Regulation 14A thereunder, including Rules 14a-3(a) and Rule 14a-9 thereunder; (b) an injunction barring defendants, their agents and attorneys, and any other persons acting in concert or participation with them from further violations of the federal securities laws, including any further solicitation of meeting requisitions, proxies or any other form of purported authorization from Mallinckrodt

shareholders in violation Section 14(a) of the Exchange Act and the rules and regulations thereunder; (c) an injunction barring defendants, their agents and attorneys, and any other persons acting in concert or participation with them from taking any steps to seek, schedule, convene, or conduct any meeting of Mallinckrodt shareholders; (d) an injunction barring defendants, their agents and attorneys, and any other persons acting in concert or participation with them from taking any action on behalf of any shareholder disclosed in their recently filed Schedule 13D, or on behalf of any other shareholder who has provided meeting requisitions, shareholder proxies, or any other form of purported authorization to defendants; and (e) should it become necessary, an order that defendants, their agents and attorneys, and any other persons acting in concert or participation with them, shall promptly withdraw any meeting requisitions or similar demands for a meeting of Mallinckrodt shareholders.[2]

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Mallinckrodt seeks a temporary restraining order immediately restraining and enjoining the illegal campaign through which defendants BHG and Parker seek to frustrate and disrupt this bankruptcy case by inciting shareholders to call a shareholder meeting and remove Mallinckrodt's board based on materially false and legally deficient proxy disclosures. BHG and Parker are actively risking the rehabilitation of Mallinckrodt—in their own words, threatening to "bring this bankruptcy to an absolute halt"—in an effort to pursue value for equity that this Court has determined is deeply out of the money.

---

[2]  The Debtors have not requested withdrawal of any requisition in the proposed temporary restraining order because no requisition has been delivered, and the Debtors are hopeful no requisition will be delivered given the pendency of these proceedings. However, the Debtors reserve the right to add such a request based on events as they occur prior to hearing on the request for a temporary restraining order.

On March 5, 2021, BHG and Parker filed a Schedule 13D reporting that they and 25 other individual shareholders, primarily from Russia in addition to the United States, had formed a group holding about 5.4% of Mallinckrodt's outstanding shares.  The Schedule 13D said the group "may" seek to call "a special shareholder meeting" or pursue "changes in the board of directors or management."  The next day, BHG and Parker emailed shareholders revealing their "activist shareholder intentions to forcibly correct the company's course."  The email declared that defendants "will be making immediate demands for certain management changes, then demanding ongoing cooperation from the board of directors, or else we will immediately call the shareholder meeting" where they would "dismiss all board members" and then "file an emergency motion to stay all proceedings in the pending Chapter 11 case."  Then, on March 10, defendants sent a public letter to the Mallinckrodt board of directors leveling false accusations of director misconduct and demanding an immediate audience with the full board — apparently constituting the demand that defendants stated on March 6 would be followed by their "immediate[] call" for a shareholder meeting.

BHG and Parker recruited their group of purported supporters through a highly misleading and public proxy campaign to achieve "immediate management and board reform," with the goal of "preserving shareholder value," notwithstanding this Court's determination that shareholders "have no economic interest in these cases."  Without ever having filed and cleared a proxy statement with the SEC or made any filings with the SEC of its multiple solicitations, as the securities laws require, BHG, through press releases, postings on a BHG-sponsored website, letters and emails to shareholders, and now a public letter to the Mallinckrodt board, has smeared the board and management, accusing them of "traitorous actions" for achieving a Restructuring Support Agreement that has the support of fifty states and territories, over 3,000 municipalities,

3

and more than 84% of Mallinckrodt's guaranteed unsecured notes.  In these illegal campaign materials, defendants have accused Mallinckrodt management and board of "abandoning" shareholder interests based on "their groundless claim of being 'hopelessly insolvent.'"  BHG and Parker have claimed instead that the "dark clouds of Mallinckrodt are nearly fading with settlements on the table where equity could emerge virtually unscathed."  Management and the board, defendants proclaimed, are guilty of "one of the largest breaches of fiduciary duty in the history of business."

These communications to Mallinckrodt shareholders are not only riddled with material falsehoods and omissions, as detailed below, they are also in complete derogation of the federal proxy rules that exist to prevent this kind of abuse.  BHG and Parker have openly solicited shareholder requisitions of an extraordinary general meeting of Mallinckrodt shareholders as well as proxies for shareholder votes in support of abandoning the RSA and ousting the Company's directors and managers in favor of individuals chosen by BHG, including Parker himself as Chairman and interim CEO.  But in extending these solicitations, defendants have simply blown past the black and white prohibition in Rule 14a-3(a) under the Securities Exchange Act of 1934 against soliciting proxies without first providing shareholders with a "publicly-filed preliminary or definitive proxy statement."  Nor has BHG complied with the requirements of Rule 14a-12 of the Exchange Act that would permit solicitations before furnishing a proxy statement, including because they never filed any of their solicitation materials with the SEC.

Proxy rules aside, defendants' threat to call a shareholder meeting to oust Mallinckrodt fiduciaries, reject the RSA, and seek to throw the Company into liquidation if their demands are not met constitutes a clear abuse of shareholder rights, openly risking the rehabilitation of Mallinckrodt in a futile attempt to win a larger share for out-of-the-money equity.  BHG and Parker

4

began their campaign only after a failed attempt to have this Court appoint an official equity committee, the fees and expenses of which would have been paid by these estates, in an effort that culminated in a finding by this Court that the "debtors are, in fact, hopelessly insolvent." Notwithstanding that finding, BHG and Parker then began soliciting proxies for a shareholder meeting with the avowed goal of precipitating a liquidation of Mallinckrodt if equity cannot seal an "advantageous deal."  In that event, said defendants, creditors should be forced to "scavenge for value just as much as equity holders, leaving a Chapter 7 liquidation the only way to prove out true actual value of assets and subsequent true shareholder's equity."  BHG and Parker have also promised to "blindside" Mallinckrodt with a "massive requisition" for a shareholder meeting, to bring these "Chapter 11 proceedings to a halt" if the meeting they demand is not convened, and to "fight to the end of the day to recover value through liquidation proceedings."

Mallinckrodt has sought relief from defendants' improper and illegal campaign on at least three grounds, and is highly likely to succeed on all three.  *First*, BHG and Parker have completely ignored Rule 14a-3(a) under the Securities Exchange Act, which prohibits soliciting proxies without first providing shareholders with a "publicly-filed preliminary or definitive proxy statement."  *Second*, defendants' inflammatory communications to Mallinckrodt shareholders are riddled with material falsehoods and omissions, as detailed below, in violation of Rule 14a-9 under the Exchange Act.  *Third*, defendants' demand for a shareholder meeting to oust Mallinckrodt fiduciaries, abandon the RSA, and pursue a liquidation of the Company is a clear abuse of the shareholder franchise—openly risking Mallinckrodt's reorganization in a futile attempt to manufacture a recovery for valueless equity—which is an abuse that calls for injunctive relief under Section 105(a) of the Bankruptcy Code.

5

Nor is there any question that defendants' illegal campaign threatens Mallinckrodt and its various constituencies—including shareholders, creditors, employees, and customers—with irreparable harm in the absence of a temporary restraining order. Defendants' proxy solicitations falsely impugn the character and motives of Mallinckrodt's directors and managers and mislead Mallinckrodt shareholders as to the value of their shares. No shareholder meeting should be held in response to these abusive tactics, but if a meeting were held, Mallinckrodt shareholders would be irreparably harmed by deprivation of the right to make properly informed decisions based on the full and fair disclosures that the federal proxy rules require. And if BHG and Parker were to succeed in their campaign, Mallinckrodt would suffer the irreparable loss of the ability to reorganize.

Finally, the public interest in preventing innocent investors from making investments based on false and misleading statements, in ensuring faithful compliance with the federal securities laws, and in the efficient conduct of these bankruptcy proceedings weighs heavily in favor of granting a temporary restraining order.

## STATEMENT OF FACTS

### A.    BHG seeks equity committee but Court determines no value for equity.

On October 12, 2020, in order to maximize value for all stakeholders and protect the enterprise from a variety of litigation, debt and other liabilities, Mallinckrodt and certain of its subsidiaries filed for bankruptcy protection pursuant to Chapter 11 of the Bankruptcy Code. *See Declaration of Stephen A Welch, Chief Transformation Officer, in Support of Chapter 11 Petitions and First Day Motions* [Bankr. D.I. 128] ("**Welch Declaration**"). In connection with the bankruptcy filing, Mallinckrodt and certain of its subsidiaries entered into a Restructuring Support Agreement supported by fifty states and territories and holders of more than 84% of Mallinckrodt's guaranteed unsecured notes. *Id.* ¶ 15. Shortly after these cases began, a group of over 3,000

6

municipalities also signed on to the RSA. *See Notice of Filing of Joinder Agreement with Multi-State Governmental Entities Group Relating to the Restructuring Support Agreement, Dated as of October 11, 2020* [Bankr. D.I. 505]. Due to Mallinckrodt's significant liabilities, and because many unsecured creditors will not be paid in full, the RSA does not contemplate any recovery to holders of Mallinckrodt's equity.

In a letter dated October 13, 2020, and docketed on October 27, BHG, acting through Parker, purported to present a *pro se* motion for the appointment of an equity committee. *Motion for Appointment of Equity Committee* [Bankr. D.I. 305]. The letter asserted that Mallinckrodt's management "has abandoned and violated their fiduciary duty, corruptly vouching to wipe out existing shareholders, when there is very surely immense value that could be returned to shareholders in the event of a liquidation" and that the Company was "far from hopelessly insolvent." *Id.* Parker charged that the Company had a "corrupt management team" that was "being steered by a just as corrupt board of directors," that the board and management were "stabbing longstanding shareholders in the back" and would do so again for "personal gain," and he characterized the Mallinckrodt balance sheet as "similar to the unfolding of a ponzi scheme." *Id.*

On December 15 and 16, 2020, after BHG ceded prosecution of its "motion" to an Ad Hoc Committee of Equity Holders of Mallinckrodt, the Court held hearings on the Ad Hoc Committee's motion to appoint an official committee of equity holders. During that hearing, the Ad Hoc Committee presented a valuation expert, William Jeffers of the Griffing Group, who opined that there was at least approximately $11 per share of value in Mallinckrodt and that the value could be more than twice that based on potential tax benefits the Company may have had. *See* LW Decl.

7

Ex. Q (Dec. 15, 2020 Hr'g Tr.) at 129:15-20 (asserting $989 million to $2.7 billion value), Ex. R

(Dec. 22, 2020 Hr'g Tr.) at 50:18-22 (noting $989 million implies $11 per share value).

This Court denied the motion to appoint an official committee of equity holders.  After a

thorough review of Mr. Jeffers's analysis, the Court found that it "failed to convince me that there

is a substantial likelihood that equity security holders will receive a meaningful recovery in these

cases."  LW Decl. Ex. R (Dec. 22, 2020 Hr'g Tr.) at 54:11-14.  Among other things, the Court

noted that Mr. Jeffers baselessly assumed that Mallinckrodt could settle opioid related liabilities

with the $1.6 billion fund contemplated by the RSA, even if the RSA were to be scrapped and

more value were to be found in the Company.  *Id.* at 51–52.  After correcting for Mr. Jeffers's

errors and unreasonable assumptions, the Court found that "it becomes apparent that the debtors

are, in fact, hopelessly insolvent" and that "the shareholders have no economic interest in these

cases."  *Id.* at 54:16-17, 55:13-14.

**B.      BHG and Parker launch an abusive and misleading campaign to threaten
         Mallinckrodt's reorganization.**

Apparently unfazed by the Court's rulings, on January 15, 2021, BHG and Parker issued a

press release (LW Decl. Ex. A (the "**January 15 Press Release**")), launched a website under the

address www.ReviveMallinckrodt.com (LW Decl. Ex. B (the "**Website**")), and issued a letter to

Mallinckrodt shareholders (LW Decl. Ex. C (the "**Shareholder Letter**")), in which they accused

Mallinckrodt's management and directors of having "entirely abandoned shareholder interests,

attempting to push through a Chapter 11 restructuring plan . . . that will extinguish all shareholder

interests."  BHG announced in these materials that it would call an extraordinary general meeting

of Mallinckrodt shareholders with the express intention of abandoning the RSA and pursuing

liquidation.  In pursuit of these objectives, defendants solicited signatures from shareholders on

meeting requisitions as well as a proxy card, by means of interactive features on the Website (LW Decl. Exs. D & E, (the "**Requisition Form**" and "**Proxy**," respectively)).

The Website invited Mallinckrodt shareholders to sign and return the Requisition Forms to BHG, with the goal of reaching the 10% threshold under Irish law for calling an extraordinary general meeting. Then, through the Proxy, BHG sought authority from Mallinckrodt shareholders to vote on their behalf at that meeting in favor of terminating the RSA, removing all twelve members of the board, and installing Mr. Parker himself as Chairman and interim CEO, with other replacement directors to be appointed by BHG at some later date. The January 15 Press Release called for these corporate changes to preserve "shareholder value" and threatened that "if equity cannot seal an advantageous deal, creditors should scavenge for value just as much as equity holders, leaving a Chapter 7 liquidation the only way to prove out true actual value of assets and subsequent true shareholder's equity." LW Decl. Ex. A (January 15 Press Release) at 3.

The Shareholder Letter went on with further attacks on Mallinckrodt managers and directors, charging them with "carelessly destroy[ing]" retirement assets. It accused management of "talking out [of] both sides of their mouth" by describing the Company as insolvent and "wheeling and dealing with our creditors and plaintiffs to merely preserve their paychecks." LW Decl. Ex. C (Shareholder Letter) at 2, 4. And without ever mentioning the Court's comprehensive rejection of Mr. Jeffers's valuation, the Shareholder Letter returned to touting that analysis, including the conclusion that "Mallinckrodt equity is conservatively worth ~$11/share and — with full tax-shield benefits —upwards of $30/share, more optimistically," as grounds for supporting the corporate actions that defendants have proposed. *Id.* at 3. The Shareholder Letter promised that BHG and Parker "will fight to the end of the day to recover value through liquidation proceedings." *Id.* at 4.

9

Defendants issued the January 15 Press Release, Website, Shareholder Letter, Requisition Form, and Proxy (together, "**<u>January 15 Solicitation Materials</u>**") without filing any preliminary proxy statement with the SEC, and none of the January 15 Solicitation Materials themselves were filed with the SEC, as Rule 14a-12 under the Exchange Act requires in order for solicitations to be permitted before furnishing a proxy statement.

### C.    Defendants continue their abusive and illegal campaign with additional misleading solicitation materials.

Defendants' misleading and abusive campaign continued on January 20, 2021, when BHG issued a press release entitled "*The Buxton Helmsley Group Announces Major Shareholder Backing to Call Mallinckrodt Meeting of Shareholders, Realign Board and Management with Shareholder Interests, Renegotiate Restructuring Plan*" (LW Decl. Ex. F (the "**<u>January 20 Press Release</u>**")).  The January 20 Press Release returned to groundlessly attacking Mallinckrodt's management and board for "abandon[ing] shareholder interests" and "unnecessarily turn[ing] all shareholder equity over to a handful of bondholders." *Id.* at 1.  The release urged shareholders that they have "nothing to lose with supporting BHG's efforts," and quoted Parker threatening that if a shareholder meeting is not held, BHG "will bring Chapter 11 proceedings to a halt, objecting to all motions brought before the Court." *Id.* at 3.

Defendants then continued their campaign on January 26, 2021, circulating by email a so-called "Important Shareholder Update" to individuals who had responded through BHG's Website (LW Decl. Ex. G (the "**<u>January 26 Email</u>**")).  The January 26 Email urged investors to acquire additional shares of Mallinckrodt "to enhance their personal profit potential," again touting the discredited valuation of "$11-30+" per Mallinckrodt share, and again without disclosing the flaws in that opinion that this Court had identified, or that after addressing errors and unreasonable

10

assumptions in the analysis, this Court found it "becomes apparent that the debtors are, in fact, hopelessly insolvent." *Id.* at 1.

Another misleading press release followed on January 27, 2021, under the headline: "The Buxton Helmsley Group Announces Sufficient Shareholder Backing to Call Mallinckrodt Meeting of Shareholders, Begin Realigning Board and Management with Shareholder Interests, Renegotiate Restructuring Plan" (LW Decl. Ex. H (the "**January 27 Press Release**")). The January 27 Press Release accused Mallinckrodt's management and board of "committing one of the largest breaches of fiduciary duty in the history of business," threatened that "any pushback" against defendants' campaign will be met with "startling communications, documents and information" that will "destroy" the "reputations" of Mallinckrodt's fiduciaries, and reiterated that defendants would respond to any such resistance by "bring[ing] this bankruptcy to an absolute halt, objecting to all motions brought forth by the company until they are no longer in their positions." *Id.* at 2.

BHG did not file the January 20 Press Release, the January 26 Email, or the January 27 Press Release with the SEC, as Rule 14a-12 under the Exchange Act required in order for such solicitations to be permitted before furnishing a proxy statement.

**D.    Defendants reaffirm their "dedication to this initiative."**

By no later than February 3, 2021, defendants had taken their Website offline and replaced it with a (presumably false) message stating, "This server is unavailable due to high traffic levels." *See* LW Decl. Ex. I. Yet Defendants continued to proliferate misinformation and signal that they intend to press on with their illicit campaign.

On February 8, 2021, an update from BHG sent to a shareholder was posted to an online message board (LW Decl. Ex. J (the "**February 8 Update**")). The February 8 Update attributed the Website shutdown (again, presumably falsely) to a "siege of endless DDoS [distributed denial-

of-service] attacks and hacking attempts." *Id.* at 1.  The update repeated defendants' predictions that Mallinckrodt's stock price will rebound and encouraged investors to "remain patient and hold," because "they will be happy they did," but that "[f]or those who do not hold, their shares will probably be bought by BHG or someone who is a supporter of our efforts." *Id.*  The February 8 Update also promised that defendants are "pushing forward" with their "shareholder initiative" and that they are "nearing the finish line." *Id.*

On February 18, 2021, defendants circulated an email with the subject line "Important Shareholder Update – February 18, 2021" to individuals who had signed up through the Website (LW Decl. Ex. K (the "**February 18 Email**")).  Defendants again claimed that the "website has been under constant hacking attempts" but this time also professed to have "opted to temporarily take the website offline, primarily to leave management wondering what was going on." *Id*. at 1.  The February 18 Email then suggested that the SEC is aligned with defendants — telling shareholders about purported support for defendants' campaign and then saying that the SEC "also is following this situation very closely." *Id.*  The February 18 Email again sought to pressure shareholders not to sell, warning that they "will only be selling their shares to an obviously more confident new holder of their shares (which very well could be BHG or others in this group, as we continue to increase our positions in the company)." *Id.*  Defendants concluded their message with a threat that they will continue to "fight this fight," and reaffirmed their "dedication to this initiative." *Id.*

BHG did not file the February 8 Update or the February 18 Email with the SEC, as Rule 14a-12 under the Exchange Act requires in order for such solicitations to be permitted before furnishing a proxy statement.

**E.      Defendants continue to solicit proxies illegally.**

Despite taking the Website offline, BHG and Parker did not stop their illegal solicitation of proxies but rather appear to have continued through non-public means to encourage shareholders who responded to their initial illegal solicitations to support defendants' efforts to call a shareholder meeting and elect new Mallinckrodt directors to pursue a recovery for equity.

On March 5, 2021, defendants filed a Schedule 13D (LW Decl. Ex. L (the "**BHG Schedule 13D**")) with the Commission, purportedly on behalf of a group of Mallinckrodt shareholders in addition to BHG.  In the BHG Schedule 13D, defendants disclose a group that together has beneficial ownership of 4,628,589 shares of Mallinckrodt, approximately 5.4% of the Company. *See id.*  The group includes BHG, Parker, and 25 other individuals and entities primarily from Russia and the United States.  *See id.*  The BHG Schedule 13D disclosed that the group "may" take any "actions they deem appropriate, including, without limitation, seeking Board representation, submitting shareholder proposals, calling for a special shareholder meeting, or calling for changes in the board of directors or management of the Issuer," *id.* at 19 — many of the same actions defendants had proposed in their previous illegal solicitations.  Defendants' 13D filing compounds those earlier proxy violations by claiming to have authority to act on behalf of numerous other shareholders without ever disclosing that defendants recruited them to join their group through illegal proxy solicitations, all of which remain uncorrected.

The next day, on March 6, 2021, defendants sent another email to Mallinckrodt shareholders who had responded to their earlier illegal solicitations (LW Decl. Ex. M (the "**March 6 Email**")).  Under the subject line "Important Shareholder Update," the March 6 Email announced the Schedule 13D filing, which defendants characterized as having announced their "activist shareholder intentions to forcibly correct the company's course." *Id.* at 1.  The email states that defendants "are awaiting a response via e-mail/phone from the board of directors," misleadingly

13

implying that defendants had requested a response from Mallinckrodt's board of directors, when in reality defendants had sent nothing to the Mallinckrodt board requesting any such response. *Id.* And in contrast to the Schedule 13D, which disclosed no definitive plans to pursue changes in Mallinckrodt's corporate governance, the March 6 Email affirmatively declared that defendants "will be making immediate demands for certain management changes, then demanding ongoing cooperation from the board of directors, or else we will immediately call the shareholder meeting under Section 178 and 1101 of the Companies Act of 2014, without notice." *Id.*

Beyond that, the March 6 Email announced that if the board did not "reach out on Monday" (meaning March 8, 2021), defendants would file "another form formally demanding a call from the board within 24-48 hours." And "[s]hould they not call my office by that deadline"—a deadline that defendants never communicated to Mallinckrodt's board—Parker declared that he and BHG "will immediately officially call the shareholder meeting to dismiss all board members and certain other individuals," purportedly "on grounds of corporate governance violations and breach of fiduciary duty, *id.*—breaches that defendants do not describe and that have not occurred. The March 6 Email further misleads Mallinckrodt shareholders with the implication that defendants have the ability to "immediately call" the shareholder meeting they have proposed; but Irish law requires a minimum of 10% of outstanding shares to call such a meeting, and the BHG Schedule 13D discloses a group that owns 5.4% of outstanding shares.

As for the bankruptcy proceedings, defendants promised in the March 6 Email that they would then also "file an emergency motion to stay all proceedings in the pending Chapter 11 case currently before the District of Delaware Bankruptcy Court." *Id.*

Twenty-five hours after sending the March 6 Email, defendants sent another email with the subject line "Important Shareholder Message - March 7, 2021" to individuals who had signed up

14

through the Website (LW Decl. Ex. N (the "**March 7 Email**")).  In this March 7 Email, Parker advises recipients that the March 6 Email had been posted on "stock discussion forums," asks them to "take those posts down," and implores them to "refrain from posting from my e-mails anywhere online" as "[i]t will jeopardize [their] efforts in this shareholder initiative."  *Id.* at 1.  Defendants thus effectively concede that their actions are in knowing violation of the proxy rules.

### F.   Defendants' illegal campaign continues with a public letter to the Mallinckrodt board.

On March 10, 2021, Parker sent a letter to the Mallinckrodt board of directors demanding that the board "contact me at once" about "holding a telephonic conference (with all directors present) no later than 4:00 pm Eastern Standard Time on Friday, March 12, 2021" (LW Decl. Ex. O ("**March 10 Letter**")).  The March 10 Letter appears to constitute what defendants described in the March 6 Email as the "formal[] demand[]" for a "call from the board within 24-48 hours" — the demand that defendants promised, if it went unanswered, would be followed by an "immediate[] official[] call" for a "shareholder meeting to dismiss all board members and certain other individuals."

The March 10 Letter also rehashes a number of the same false statements about the Mallinckrodt board that defendants included in their earlier solicitation materials, in further violation of Rule 14a-9.  Among other falsehoods, the letter accuses the board of "[s]elf-dealing" and "[c]apriciously settling litigation for the convenience of the Board and management without regard to the impact on the owners of the Company," without providing any evidence of anything like that.  Defendants included the March 10 Letter as an exhibit to an amended Schedule 13D (Exhibit P) — a public disclosure that constitutes an additional illegal solicitation of proxies.

### ARGUMENT

"Generally speaking, courts apply the standards for granting a preliminary injunction in

determining the propriety of issuing a temporary restraining order." *Tootsie Roll Indus., Inc.* v. *Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del. 1987); *see also Intercept Pharm., Inc.* v. *Fiorucci*, No. CV 14-1313-RGA, 2016 WL 6609201, at *1 (D. Del. Jan. 28, 2016).  Thus, a temporary restraining order should issue where a movant demonstrates that (1) it is "likely to succeed on the merits," (2) that it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest."  *Reilly* v. *City of Harrisburg*, 858 F.3d 173, 177 (3d Cir. 2017) (quoting *Winter* v. *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *accord In re THG Holdings LLC*, 604 B.R. 154, 162 (Bankr. D. Del. 2019), *perm. app. denied*, 2020 WL 1493622 (D. Del. Mar. 27, 2020). Likelihood of success and irreparable harm are considered the "two 'most critical' factors."  *Id.* at 179.  If a movant establishes these "gateway factors," a court considers the remaining two factors and "determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."  *Id.*

These traditional injunction factors likewise govern whether to issue a temporary restraining order under Section 105 of the Bankruptcy Code, as modified to fit the bankruptcy context.  *See In re W.R. Grace & Co.*, 412 B.R. 657, 665 (D. Del. 2009).

All the relevant factors favor a temporary restraining order barring defendants' illegal and abusive solicitation of a meeting of Mallinckrodt shareholders, as demonstrated below.

## I.   MALLINCKRODT IS LIKELY TO SUCCEED ON THE MERITS.

The Complaint asserts three claims that are highly likely to succeed on the merits:  BHG and Parker have simply ignored the procedures mandated by the federal proxy rules in their solicitation of an extraordinary general meeting; their solicitation materials are riddled with material misstatements and omissions; and their campaign openly jeopardizes the reorganization

of Mallinckrodt, expressly threatening to delay the bankruptcy case and liquidate the Company for the sake of equity that this Court has determined has no value.

### A.   Defendants have blatantly violated Rule 14a-3(a) of the Exchange Act.

BHG and Parker have made no effort to hide that they are soliciting proxies — their campaign materials expressly invite shareholders to return a form labeled "**Proxy**" to BHG. Yet BHG has not lifted a finger to comply with the rules promulgated under Section 14(a) of the Exchange Act to regulate the solicitation of proxies. These violations of the federal proxy rules are properly the subject of a claim by Mallinckrodt, as the issuer subject to the proxy campaign.[3]

At the most basic level, Rule 14a-3(a) provides that "no solicitation … shall be made unless each person solicited is concurrently furnished or has been previously furnished with [a] publicly-filed preliminary or definitive proxy statement" containing the information specified in Schedule 14A. The required proxy statement is the primary vehicle through which the securities laws and the SEC ensure that decisions by the corporate electorate are made on a fully and fairly informed basis. Thus, the proxy rules not only specify in great detail the form, content and manner of availability of the proxy statement, *see, e.g.*, Rule 14a-5, Rule 14a-16, Rule 14a-101 (Schedule 14A), but also carefully identify the limited instances when a proxy statement is not required, *see* Rule 14a-2, and when solicitations can be made prior to filing a proxy statement, *see* Rule 14a-12.

---

[3]   *See Gen. Time Corp.* v. *Talley Indus., Inc.*, 403 F.2d 159, 161 (2d Cir. 1968) ("[T]he corporation has standing to bring [a Rule 14a-9(a)] action, [and] an injunction may issue on a proper showing.") (citation omitted); *Int'l Jensen Inc.* v. *Emerson Radio Corp.*, No. 96 C 2816, 1997 WL 43229, at *3 (N.D. Ill. Jan. 24, 1997) ("[T]here is considerable precedent establishing that a target corporation has standing to pursue a private cause of action under § 14(a)."); *Allergan, Inc.* v. *Valeant Pharm. Int'l, Inc.*, No. SACV 14-1214 DOC ANX, 2014 WL 5604539, at *16 (C.D. Cal. Nov. 4, 2014) ("[The issuer] has standing to bring Section 14(a) and Rule 14a-9 claims").

Defendants, however, have violated this entire regulatory regime by not furnishing a proxy statement before soliciting proxies.

Both the Requisition Form, which defendants urged shareholders to sign and return to Mallinckrodt to request an extraordinary general meeting, and the Proxy, which invited shareholders to grant BHG the authority to vote their shares in favor of the abusive actions through which defendants seek to jeopardize the Company's rehabilitation, fall within the definition of "proxy" under Rule 14a-1(f). *See* Dennis R. Honabach & Mark A. Sargent, *Proxy Rules Handbook* § 2:8 (2020-2021 ed.) (noting that proxies that fall within definition of Rule 14a-1(f) include requests for "[a]uthorization to call a special meeting"). BHG's communications openly "request" these proxies or are "reasonably calculated to result in the procurement" of these proxies, such that they fall within the broad definition of "solicitation" in Rule 14a-1(l). Moreover, because the Requisition Form and Proxy each independently constitutes a "proxy" as so defined, defendants' solicitations of Requisition Forms and Proxies are each independent violations of Rule 14a-3(a). Therefore, for defendants to conduct their campaign in compliance with Rule 14a-3(a), they were required to conduct two successive solicitations: first, they needed to file and clear with the SEC a proxy statement with respect to solicitation of meeting requisitions; and then, if the special meeting was called, they would have had to file and clear a second proxy statement in order to solicit proxies to be voted at the meeting. Defendants have done neither.

Defendants' illegal solicitations, moreover, are not limited to the public communications described above but also include their non-public, direct communications with other shareholders, including the shareholders identified in the BHG Schedule 13D, soliciting their support for defendants' campaign to call a meeting and elect new directors to pursue a recovery for equity. "[A]ny communication that, under the totality of relevant circumstances, is considered 'part of a

18

continuous plan ending in a solicitation and which prepare(s) the way for its success'" falls within the ambit of the proxy rules, "regardless of whether the person is seeking authorization to act as a proxy" in the communication.  SEC Release No. 34-57172, Jan. 18, 2008.  Such solicitations cannot be made without first furnishing shareholders with a "publicly-filed preliminary or definitive proxy statement."  *See* 17 C.F.R. § 240.14a-3(a)(1).

Nor can BHG and Parker argue that their solicitation materials fall within the limited exception to Rule 14a-3(a) permitted by Rule 14a-12 for "solicitations before furnishing a proxy statement."  That rule explicitly requires that a "definitive proxy statement" be sent to shareholders "solicited in reliance on this section before or at the same time as the forms of proxy, consent or authorization are furnished to or requested from security holders."  17 C.F.R. § 240.14a-12(a)(2). It does *not* allow what BHG did here — actually providing and soliciting forms of proxies, consents or authorizations from shareholders without a publicly-filed definitive proxy statement. In any event, Rule 14a-12 further provides that any soliciting material provided to shareholders "must be filed with the Commission" on the same day that it is first sent to a shareholder.  17 C.F.R. § 240.14a-12(b).  Defendants have not filed any of their solicitation materials with the SEC in the manner required by Rule 14a-12.[4]  Defendants have simply ignored the law and should be enjoined from proceeding with their campaign.  *See, e.g.*, *SEC* v. *Am. Real Estate Inv. Tr.*, 529 F. Supp. 1300, 1305 (C.D. Cal. 1982) (granting preliminary injunction based on defendant's failure to file preliminary or definitive proxy statements with the SEC as required by Rule 14a-3).

---

[4]    Defendants' filing of the March 10 Letter as an exhibit to their amended Schedule 13D does not satisfy Rule 14a-12, which imposes its own specific filing requirements in order for solicitations to be permitted before furnishing a proxy statement.

### B.      Defendants' communications are false and misleading in violation of Rule 14a-9.

Having entirely ignored the federal regulatory regime that exists to protect investors from deceptive proxy campaigns, BHG and Parker proceeded to subject Mallinckrodt shareholders to a stream of solicitation communications rife with materially misleading statements and omissions, in flagrant violation of the core requirements under Rule 14a-9.

Section 14(a) was intended "to promote the free exercise of the voting rights of stockholders by ensuring that proxies would be solicited with explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought." *Mills* v. *Elec. Auto-Lite Co.*, 396 U.S. 375, 381 (1970) (quotations removed).  Consistent with this purpose, Rule 14a-9(a), promulgated under Section 14(a), prohibits proxy solicitations "containing any statement which . . . is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  A fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus. Inc.* v. *Northway, Inc.*, 426 U.S. 438, 449 (1976).  Even negligent misrepresentations, if material, can suffice to establish a violation of Rule 14a-9.  *See Herskowitz* v. *Nutri/Sys., Inc.*, 857 F.2d 179, 190 (3d Cir. 1988).

Mallinckrodt is likely to succeed in demonstrating that the following aspects of defendants' solicitation communications were materially misleading under Rule 14a-9.

*First*, BHG has repeatedly portrayed the condition of the Company and the value of its shares with unsupported and misleading optimism and without disclosing directly contradictory judicial findings.  In particular, BHG dismissed Mallinckrodt's position that the Company is insolvent as "groundless" (LW Decl. Ex. C (Shareholder Letter) at 2), without acknowledging that this Court so found after an evidentiary hearing.  Likewise, defendants repeatedly touted the

analysis that Mr. Jeffers presented to this Court as support for their communications to shareholders that Mallinckrodt equity is "conservatively worth ~$11/share and — with full tax-shield benefits — upwards of $30/share, more optimistically" (*id.* at 3; *see also* LW Decl. Ex. G (January 26 Email) at 1), but never disclosed that this Court rejected that analysis and found that, once corrected, "it becomes apparent that the debtors are, in fact, hopelessly insolvent." BHG further misled shareholders with the assertion that "settlements are on the table at this very moment to alleviate all litigation headwinds of the company" through which "equity could emerge virtually unscathed" (LW Decl. Ex. C (Shareholder Letter) at 2, 3), but failed to disclose this Court's observation that the governmental plaintiffs have valued the Company's "liabilities at $2.2 trillion and there is no evidence to suggest that the government would simply walk away from any potential claims against Mallinckrodt if, indeed, it was solvent." LW Decl. Ex. R (Dec. 22, 2020 Hr'g Tr.) at 51. The same omissions concerning the Company's insolvency rendered misleading the suggestions in defendants' solicitation materials that shareholders would somehow benefit from a "fight to the end of the day to recover value through liquidation proceedings." LW Decl. Ex. C (Shareholder Letter) at 4; *see Lane* v. *Page*, 581 F. Supp. 2d 1094, 1126 (D.N.M. 2008) (holding that the plaintiff had adequately alleged a Rule 14a-9 violation because, "once the Defendants chose to [disclose the] valuation, the Defendants had a duty to be accurate and complete in what it said about the valuation").

*Second*, BHG and Parker have larded their solicitations with groundless *ad hominem* attacks on Mallinckrodt management and directors, claiming without any basis whatsoever that these fiduciaries' actions in these bankruptcy cases have been motivated by personal interests rather than their duties to the enterprise. They have accused management and the board of acting "to merely preserve their paychecks," with no evidence for that whatsoever (LW Decl. Ex. C

21

(Shareholder Letter) at 4); they have asserted groundlessly that the restructuring of Mallinckrodt will "enrich management with a 10% allocation of the reorganized company" ((LW Decl. Ex. A (January 15 Press Release) at 1, 3, 4; LW Decl. Ex. F (January 20 Press Release) at 1)), when in fact any post-reorganization equity incentives would be awarded only to post-reorganization management, to be appointed by a new board elected by post-reorganization shareholders; and they have accused Mallinckrodt's directors of "[s]elf-dealing" (LW Decl. Ex. O (March 10 Letter)), without any evidence whatsoever.

The overheated *ad hominem* rhetoric did not stop there.  Defendants have gone on to accuse the board and management of "destroy[ing] the retirement account values of many, and ha[ving] absolutely no qualms about it," and have charged that the managers and directors "could not have displayed more traitorous actions."  LW Decl. Ex. F (January 20 Press Release) at 3.  Defendants have even suggested that the SEC agreed with these attacks, claiming that agency "also is following this situation very closely."  LW Decl. Ex. K (February 18 Email) at 1.  Statements like these that "impugn[] character, integrity or personal reputation, or … make[] charges concerning improper, illegal or immoral conduct …  without factual foundation" are prohibited as misleading under Rule 14a-9.  17 C.F.R. § 240.14a-9 note; *see, e.g.*, *Bender* v. *Jordan*, 439 F. Supp. 2d 139, 169 (D.D.C. 2006) (granting preliminary injunction because plaintiff was likely to prevail on a 14a-9 claim involving "a direct assault on . . . character with no factual basis").

*Third*, defendants' solicitation materials have further misled shareholders with regard to the progress of these proceedings and the level of support for their abusive initiatives.  BHG has asserted that "virtually no parties support" the RSA "except those receiving highly preferential treatment," when in fact the RSA is supported by most of the key parties with an economic interest in the bankruptcy, including those agreeing to a deeply impaired recovery as opposed to "highly

preferential treatment." Defendants have also claimed that Mallinckrodt made an "express admission (at the recent equity committee appointment hearing) of not attempting many paths to preserve equity (more notably, no attempt at all to sell the company)" and "expressly admitted at the December 16th court hearing" to a breach of fiduciary duty, when no such admissions were made.

For its part, in the Requisition Form, BHG previously purported to be acting with the authority of a "vast array of shareholders" (LW Decl. Ex. D (Requisition Form) at 1, employing vague and amorphous language that makes it impossible for solicited shareholders to gauge the significance of whatever support defendants' campaign has received. *See Lone Star Steakhouse & Saloon, Inc.* v. *Adams*, 148 F. Supp. 2d 1141, 1152 (D. Kan. 2001) (granting preliminary injunction where false statements of shareholder support could "generate bandwagon effect on other shareholders"). Thereafter, on January 27, 2021, defendants vaguely announced that they had "sufficient shareholder backing" to requisition a shareholder meeting, which presumably meant that they had the support of at least 10% of shareholders as required under Irish law. *See* LW Decl. Ex. H (January 27 Press Release). These false statements on the level of support were presumably intended to encourage shareholders to join defendants' efforts. Yet in their Schedule 13D, which is meant to *clarify* the number of shareholders who signed on to their campaign, defendants claimed to act on behalf of shareholders holding only 5.4% of Mallinckrodt's outstanding shares. *See* LW Decl. Ex. L (BHG Schedule 13D). And then the next day, defendants announced in their March 6 Email that other shareholders were left off the 13D filing due to timing issues and the "administrative burden" of including them. *See* LW Decl. Ex. M (March 6 Email). Shareholders are thus left to wonder whether defendants have signed on more than 10% of outstanding shares, merely 5.4%, or some other number entirely. These contradictory

23

representations are material and misleading in violation of Rule 14a-9.  *See Lone Star Steakhouse*, 148 F. Supp. 2d at 1152.

*Fourth*, defendants are misleading shareholders about their plans and their interactions with the board.  In the March 6 Email, defendants implied that they had sent a request to Mallinckrodt's board of directors and were "awaiting a response via e-mail/phone from the board of directors" (*see* LW Decl. Ex. M (March 6 Email)), at a point when Mallinckrodt had received no such request and otherwise had no obligation to respond to their Schedule 13D.  Defendants then threatened that if Mallinckrodt's board did not respond to a request that defendants never sent, defendants would "immediately call the shareholder meeting under Section 178 and 1101 of the Companies Act of 2014, without notice."  *Id.*  That too was materially misleading because defendants did not let on that any requisition notices or proxies they had received were invalid for having been solicited in violation of the proxy rules, which defendants themselves appeared to understand, as evidenced by their March 7 Email asking recipients to keep their communications offline so they could avoid further scrutiny.  *See* LW Decl. Ex. N (March 7 Email).

### C.    The Court should grant injunctive relief under Section 105(a) of the Bankruptcy Code.

Mallinckrodt is equally likely to prevail on its claim for injunctive relief barring BHG and Parker from abusing shareholder rights to impede a reorganization.  Section 105(a) authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Under Section 105, "a bankruptcy court may enjoin the occurrence of a shareholder meeting as well as the implementation of the results of such a meeting when there is 'clear abuse,' in other words, a showing of delay and real jeopardy to a debtor's reorganization."  *In re SS Body Armor I*, 527 B.R. 597, 607 (Bankr. D. Del. 2015) (citing *In re Johns-Manville Corp.*, 801 F.2d 60, 63–66 (2d Cir. 1986); *Fogel* v. *U.S. Energy*

*Systems, Inc.*, No. 3271, 2008 WL 151857, *1–2 (Del. Ch. Jan. 15, 2008); *In re Marvel Entm't Grp., Inc.*, 209 B.R. 832, 838 (D. Del. 1997); *Matter of Concrete Products, Inc.*, 110 B.R. 997, 1000 (Bankr. S.D. Ga. 1989)).[5]

While courts will protect the rights of shareholders to exercise bargaining power in good faith, that consideration falls away where "the shareholders' action . . . 'demonstrates a willingness to risk rehabilitation altogether in order to win a larger share for equity.'" *Marvel,* 209 B.R. at 838 (quoting *Johns-Manville*, 801 F.2d at 65). Moreover, shareholder bargaining power becomes irrelevant when the debtor is insolvent. *See Johns-Manville*, 801 F.2d at 65 n.6 ("[I]f Manville were determined to be insolvent, so that the shareholders lacked equity in the corporation, denial of the right to call a meeting would likely be proper, because the shareholders would no longer be real parties in interest.")

Here, this Court has already determined that the Debtors are "hopelessly insolvent." LW Decl. Ex. R (Dec. 22, 2020 Hr'g Tr.) at 54:16-17. There can be no "advantageous deal" for equity (LW Decl. Ex. A (January 15 Press Release) at 3), because the "shareholders have no economic interest in these cases." LW Decl. Ex. R (Dec. 22, 2020 Hr'g Tr.) at 55:13-14. Indeed, *no* board can discharge its fiduciary duties under Irish law *or* US law by pursuing an equity recovery that simply does not exist. *See* Ranalow Decl. ¶ 22 (stating that under Irish law any current or future director of plc while plc is insolvent would be breaching his or her fiduciary duties by exercising a director's functions in a manner which furthers the interests of the shareholders but which would prejudice the interests of creditors and cause them to suffer loss); *see also Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 355 (1985) (explaining that directors of debtor in

---

[5]   The *Body Armor* court denied injunctive relief due to the procedural error of failing to commence an adversary proceeding to request injunctive relief. *SS Body Armor I*, 527 B.R. at 607.

possession bear fiduciary duties of trustee extending to creditors as well as shareholders); *id.* ("One of the painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors.")*.* The pointlessness of the exercise alone establishes clear abuse. *See Johns-Manville*, 801 F.2d at 65 n.6.

Moreover, BHG's and Parker's plan is worse than pointless, it is avowedly destructive. Defendants have made clear that they intend to disrupt and delay these proceedings as much as possible, going so far as to promise "an emergency motion to stay all proceedings in the pending Chapter 11 case currently before the District of Delaware Bankruptcy Court." LW Decl. Ex. M (March 6 Email). But BHG and Parker have gone further, stating that in the absence of the aforementioned and impossible "advantageous deal" they will seek chapter 7 liquidation. LW Decl. Ex. A (January Press Release) at 3. In other words, BHG and Parker are not just incidentally risking delay or putting the reorganization in "real jeopardy"; they are actively seeking to destroy the company. While there may be difficult line-drawing cases on "clear abuse," this is not one of them. *See Body Armor*, 527 B.R. at 607 (showing of delay and real jeopardy alone establishes clear abuse). BHG's and Parker's solicitations, and the conduct and results of any shareholder meeting, should be enjoined under Section 105(a) as a clear abuse in conflict with Mallinckrodt's reorganization process.

## II.   MALLINCKRODT WOULD SUFFER IRREPARABLE HARM IN THE ABSENCE OF A TEMPORARY RESTRAINING ORDER.

The Debtors are suffering and will continue to suffer irreparable harm absent the entry of immediate relief enjoining defendants' illegal campaign for a shareholder meeting. Mallinckrodt faces at least two separate but related forms of irreparable harm in the absence of a temporary restraining order.

US-DOCS\121173137.8

*First*, the Company is suffering continuing irreparable harm from BHG's and Parker's ongoing solicitation of meeting requisitions and proxies without required disclosures and on the basis of false and misleading communications.  The "deprivation of [the] statutory rights to receive accurate information . . . [is] the precise harm[] against which securities laws were intended to guard," *Bender* v. *Jordan*, 439 F. Supp. 2d 139, 176 (D.D.C. 2006), and courts have recognized that "[t]he threat of an uninformed stockholder vote constitutes irreparable harm."  *ODS Techs., L.P.* v. *Marshall*, 832 A.2d 1254, 1262 (Del. Ch. 2003); *accord Allergan, Inc.* v. *Valeant Pharm. Int'l, Inc.*, No. SACV 14-1214 DOC ANX, 2014 WL 5604539, at *16 (C.D. Cal. Nov. 4, 2014); *Bender*, 439 F. Supp. 2d at 177–78 (collecting cases); *Kaufman* v. *Cooper Cos. Inc.*, 719 F. Supp. 174, 178 (S.D.N.Y. 1989).  These rights are so fundamental to the operations of any issuing company that the issuer itself is harmed by proxy violations and has standing to enjoin them.  *See id*. at *14; *Diceon Elecs., Inc.* v. *Calvary Partners, L.P.*, 772 F. Supp. 859, 867 (D. Del. 1991) ("[A] target company has standing to sue for equitable remedies under § 14(a).").

Immediate relief is particularly necessary here because BHG's and Parker's attempts to solicit shareholder support on misleading pretenses are not only ongoing but escalating.  For example, after touting Mr. Jeffers's flawed valuation opinion in their initial solicitation materials on January 15—notwithstanding this Court's rejection of that same analysis—BHG and Parker went further on January 26, advising shareholders on the basis of Mr. Jeffers's discredited valuation opinion that they should buy more Mallinckrodt shares to "secure the success of our reform agenda, and also to enhance their personal profit potential, given the extremely cheap price at which Company stock can be acquired for at this moment."  LW Decl. Ex. G (January 26 Email) at 1.  And just this week, their March 10 Letter groundlessly accused the Company's directors of self-dealing.  LW Decl. Ex. O (March 10 Letter) at 1.  If BHG and Parker are not restrained from

27

these materially misleading communications, they can only be expected to bring further harm on Mallinckrodt and its stakeholders. *Bender*, 439 F. Supp. 2d at 177 (violations that are "not only actual and imminent" but "realized and ongoing" constitute irreparable harm and warrant injunctive relief). In fact, the BHG Schedule 13D shows that other shareholders have in fact fallen for defendants' false and misleading campaign, and that defendants intend to acquire more shares in furtherance of their destructive plan. *See* LW Decl. Ex. L (BHG Schedule 13D).

*Second*, immediate relief is necessary to restrain BHG and Parker from disrupting these bankruptcy proceedings and jeopardizing Mallinckrodt's reorganization. To begin with, BHG's and Parker's actions and *ad hominem* attacks on management already constitute a substantial and unwarranted distraction to a management team devoted more than full-time to managing the enterprise and guiding the Debtors through a complex Chapter 11 process. *See* Eisenberg Decl. ¶ 23. As this Court is aware, the Debtors' cases are particularly complex and involve ongoing, delicate negotiations with a diverse group of creditor constituents. These negotiations, and the process of reorganizing for stakeholders with a real economic interest in these cases, require the full attention of the Debtors' management as well as a meaningful commitment of time from the directors. *Id.* However, management is diverted from that focus by reviewing, absorbing, and considering responses to BHG's ongoing public attacks. *Id*. This distraction will increase markedly if BHG and Parker are permitted to escalate their attacks by continuing their campaign to call a shareholder meeting with the stated purpose of jettisoning the board and thereafter firing management "for cause." *See* LW Decl. Ex. A (January 15 Press Release) at 3; Eisenberg Decl. ¶ 23. This Court has already held in a related context that distraction of management constitutes irreparable harm. LW Decl. Ex. S (Nov. 23, 2020, Hr'g. Tr.) at 52:15-53:10 (discussing irreparable harms arising from diverting attention to non-stayed litigation).

28

In addition, these ongoing attacks affect not only management but also the Debtors' stakeholders—patients, employees, suppliers, vendors, creditors, among many others—whom are told to doubt not only the Debtors' management and governance, but also that the Debtors will successfully reorganize.  *See* Eisenberg Decl. ¶ 24.  As discussed, BHG's and Parker's attacks include that they will seek a Chapter 7 liquidation as a means to increase recovery to equity. Ongoing commentary of liquidation will undoubtedly cause the Debtors' key stakeholders— vendors, customers and employees—to reconsider whether the very stability that Debtors have worked so hard to achieve post filing truly exists.  *Id.*  Losing the confidence of these stakeholders risks loss of support from important operating partners that are essential for maximizing enterprise value and recovery to creditors.  *Id.*  Similarly, the uncertainty created by these continuing attacks threatens to undermine the ongoing efforts to further gain support of key creditor constituents who do have economic stakes in the reorganization, and whose engagement is critical to progressing the Debtors' cases on an efficient and value-maximizing timeframe.  *Id.*  While negative press releases are damaging in and of themselves, this damage to stakeholder support may increase markedly if Defendants are permitted to pursue a shareholder meeting with the aim of replacing the board, firing management, and terminating the Debtors' complex and well advanced reorganization efforts.  *Id.*  This Court has also already held that harm to the Debtors' business through loss of stakeholder confidence, as well as through the further diversion of management to the task of reassuring stakeholders, constitutes irreparable harm.  LW Decl. Ex. S (Nov. 23, 3030, Hr'g. Tr.) at 52:15-53:10.

The aforementioned harms arise just from the *process* of attempting to call a shareholder meeting.  The irreparable harm that will arise if BHG and Parker are permitted actually to convene such a meeting and to direct votes to implement their strategy is self-evident:  in that event, the

29

company will be destroyed. *See, e.g.*, LW Decl. Ex. A (January 15 Press Release) at 3 ("[I]f equity cannot seal an advantageous deal, creditors should scavenge for value just as much as equity holders, leaving a Chapter 7 liquidation the only way to prove out true actual value of assets and subsequent true shareholder's equity."). BHG and Parker's actions, if successful, would "result [in the] loss of the ability to reorganize," which this Court has found to constitute irreparable harm. *See THG Holdings*, 604 B.R. at 162; *accord In re Midway Games, Inc.*, 428 B.R. 327, 334 (Bankr. D. Del. 2010); *Sudbury, Inc.* v. *H. Escott*, 140 B.R. 461, 464 (Bankr. N.D. Ohio 1992); *In re Monroe Well Service, Inc.*, 67 B.R. 746, 755 (Bankr. E.D. Pa. 1986).

Immediate relief is necessary to avoid these harms because, in the event BHG and Parker validly submits a requisition under Irish law, the directors of plc will be obligated to call an extraordinary general meeting within 21 days of the requisition date, with the meeting to be held within two months of the Requisition Date. *See* Ranalow Decl. ¶ 13.

## III.   THE BALANCE OF EQUITIES FAVORS A TEMPORARY RESTRAINING ORDER.

On the other side of the scale, BHG and Parker would suffer no cognizable harm if required to pause their illegal campaign until this Court has had an opportunity to determine whether a preliminary injunction should be entered. "Hardship to a defendant is low where the defendant would only be enjoined from activity that is illegal or improper." *Citcon USA, LLC* v. *RiverPay Inc.*, 2019 WL 2603219, at *3 (N.D. Cal. June 25, 2019) (citing *Henry Schein, Inc.* v. *Cook*, 191 F. Supp. 3d 1072, 1077 (2016)). And if there were any chance that defendants' campaign might survive a motion for preliminary injunction, they would suffer no prejudice at all from the delay. *See, e.g.*, *Lewis* v. *Gen. Emp. Enters.*, 1991 WL 11383, at *3 (N.D. Ill. Jan. 21, 1991) (balance of harms tips in favor of injunction because postponement of special shareholder meeting would "protect the right of informed corporate suffrage rather than deny it").

30

## IV.     A TEMPORARY RESTRAINING ORDER WILL SERVE THE PUBLIC INTEREST.

The relief that Mallinckrodt requests in the form of a temporary restraining order would promote the public interest in at least three important ways. *First*, the requested restraining order would prevent further violations of the federal securities laws and protect shareholders and market participants from the dissemination of false and misleading information in connection with proxy solicitations. Thus, federal courts have enjoined defendants from using rights attendant to unlawfully acquired shares or proxies, including cancelling special shareholder meetings solicited in violation of the proxy rules, and have enjoined defendants from claiming the benefit of proxies solicited in violation of Section 14(a) of the Exchange Act. *See, e.g.*, *Nowling* v. *Aero Servs. Int'l, Inc.*, 734 F. Supp. 733, 741–42 (E.D. La. 1990) (granting a preliminary injunction to enjoin a special shareholder meeting called in violation of Rule 14a-3); *Allergan*, 2014 WL 5604539, at *16 (finding that a preliminary injunction preventing an uninformed shareholder vote and ordering corrective disclosures would be "preferable to sorting out post-vote remedies for uninformed shareholders").

*Second*, relatedly, BHG's and Parker's material misstatements include promises that Mallinckrodt equity, which will be canceled as part of the Debtors' reorganization, has substantial value and should be accumulated for "profit potential." *See* LW Decl. Ex. A (January 15 Press Release); LW Decl. Ex. G (January 26 Email) at 1. Investors who rely on these statements are being, and will be, harmed by making, and losing, investments in Mallinckrodt equity. It is plainly in the public interest that the public at large be safe from misleading statements that are certain to cause economic harm if acted upon.

*Third*, the requested restraining order would vindicate the public's interest in the largely consensual reorganization of Mallinckrodt, protecting the interests of the legitimate stakeholders

in the restructuring — including fifty states and territories, over 3,000 municipalities, more than 1,000 individual plaintiffs represented by the Plaintiffs' Executive Committee, among others — from defendants' threat to grind these proceedings "to an absolute halt" while pursuing a liquidation. *See* Eisenberg Decl. ¶ 24. As this Court has held, "Congress has established a system under the Bankruptcy Code that favors the ability of companies to restructure rather than liquidate." *THG Holdings*, 604 B.R. at 163 (citing *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 343 (3rd Cir. 2006)). The debtor in *THG Holdings* was a medical testing company, and this Court was concerned that if the debtor were "forced to stop testing and liquidate . . . patients would have to resubmit samples to other labs," with "potentially serious implications for some patients." *Id.* Mallinckrodt is one of the nation's major manufacturers of pharmaceuticals, and with respect to some of its products, it is the only provider of lifesaving medications. Just as in *TGH Holdings*, Mallinckrodt's "continuing to operate as a going concern, providing healthcare services, serves the public's interest." *Id.*

## **CONCLUSION**

For the foregoing reasons, Mallinckrodt respectfully requests that this Court enter the accompanying temporary restraining order.

*[Signature page follows]*

32

Dated: March 12, 2021

*/s/ Robert J. Stearn, Jr.*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Robert C. Maddox (No. 5356)
Brendan J. Schlauch (No. 6115)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
         stearn@rlf.com
         merchant@rlf.com
         steele@rlf.com
         maddox@rlf.com
         schlauch@rlf.com

- and –

**WACHTELL, LIPTON, ROSEN & KATZ**
John F. Lynch (*pro hac vice* pending)
Andrew J. Cheung (*pro hac vice* pending)
Kiet T. Lam (*pro hac vice* pending)
51 West 52nd Street
New York, New York 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000
Email:    jlynch@wlrk.com
         ajhcheung@wlrk.com
         ktlam@wlrk.com

- and –

**LATHAM & WATKINS LLP**
George A. Davis (admitted *pro hac vice*)
Christopher Harris (admitted *pro hac vice*)
George Klidonas (admitted *pro hac vice*)
Andrew Sorkin (admitted *pro hac vice*)
Anupama Yerramalli (admitted *pro hac vice*)
Hugh K. Murtagh (admitted *pro hac vice*)
885 Third Avenue
New York, New York 10022
Telephone:    (212) 906-1200
Facsimile:    (212) 751-4864
Email:    george.davis@lw.com
         christopher.harris@lw.com
         george.klidonas@lw.com
         andrew.sorkin@lw.com
         anu.yerramalli@lw.com
         hugh.murtagh@lw.com

Jeffrey E. Bjork (admitted *pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, California 90071
Telephone:    (213) 485-1234
Facsimile:    (213) 891-8763
Email:    jeff.bjork@lw.com

Elizabeth Marks (admitted *pro hac vice*)
200 Clarendon Street
Boston, MA 02116
Telephone:    (617) 948-6000
Facsimile:    (617) 948-6001
Email:    betsy.marks@lw.com

Jason B. Gott (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:    (312) 876-7700
Facsimile:    (312) 993-9767
Email:    jason.gott@lw.com

*Counsel for Debtors and Debtors in Possession*

33