# EXHIBIT A

# The Buxton Helmsley Group to Call Meeting of Mallinckrodt Shareholders to Realign Board and Management with Shareholder Interests, Renegotiate Restructuring Plan

NEWS PROVIDED BY
**The Buxton Helmsley Group, Inc.** →
Jan 15, 2021, 15:18 ET

NEW YORK, Jan. 15, 2021 /PRNewswire/ --

The Mallinckrodt board and management has entirely abandoned shareholder interests, attempting to push through a Chapter 11 restructuring plan (their case pending before the U.S. District of Delaware Bankruptcy Court) that will extinguish all shareholder interests, unnecessarily turn all shareholder equity over to a handful of bondholders, and enrich management with a 10% allocation of the reorganized company when they currently own less than 0.03% of the existing company.

11 out of 12 Mallinckrodt Directors did not meet the requirement to retain ownership of five times their annual cash retainer in common stock as of the petition date, and far, far before that.

Mallinckrodt Chief Executive Officer Mark Trudeau was (and is still) incompliant with his requirement to retain ownership of five times his annual salary in common stock (throughout all of 2020), and has – since Chapter 11 petition filing – sold off over 95% of the little equity he did have in the company.

Vice President Stephen Welch stated during the recent December 16th hearing on appointment of an official equity committee that the company is now representing the interests of creditors, citing Irish law, prematurely having breached their fiduciary duty to shareholders without having pursued numerous attempts to preserve equity value and prove insolvency (admitting not even an attempt to sell the company), and pursuing the path of least assurance for a distribution to equity holders (a reorganization with a maximum distribution of zero to shareholders instead of a Chapter 7 liquidation with no set distribution ceiling for shareholders).

Buxton Helmsley calls to make immediate significant board and management changes due to management's refusal to respond to shareholder inquiries, offerings of financing opportunities, and that express admission (at the recent equity committee appointment hearing) of not attempting many paths to preserve equity (more notably, no attempt at all to sell the company).

The Buxton Helmsley Group, Inc. (together with certain of its affiliates and clients, "BHG" or "we"), the New York City-based investment advisor to clients with significant, and increasing, holdings of Mallinckrodt Plc. ("Mallinckrodt" or the "Company") common stock (OTC: MNKKQ), and with the backing of other various significant shareholders, today issued a letter to Mallinckrodt shareholders expressing utter disdain with management's recent actions relating to their proposed Restructuring Support Agreement (the "RSA") terms as part of the Company's voluntary Chapter 11 reorganization case pending before the U.S. District of Delaware Bankruptcy Court (the "Court").

Shareholders supporting the following described actions contemplated by BHG should immediately e-mail mnk@buxtonhelmsley.com for required materials to legally exercise the power of their shares in support of the shareholder meeting and the contemplated actions.

BHG is calling to remove all directors not in compliance with the corporate governance (as part of the compensation plan) requirement (11 out of 12 directors) that mandates they are/were to retain five times their annual cash retainer in common stock of the Company, as of the date which the Company filed its voluntary Chapter 11 petition.  BHG is also calling to remove all officers who were not in compliance with the corporate governance requirements surrounding their common stock share ownership requirements as of the petition date.  That would include the removal and replacement of Chief Executive Officer Mark Trudeau, who held a mere

228,384 shares (valued at ~$157,584) as of the Chapter 11 petition date, despite being required to hold five times his annual salary in common stock ($1.05 million being Mr. Trudeau's base salary, requiring $5.25 million in equity retention) of the Company.  Trudeau was, throughout all of 2020, never in compliance with his requirement to hold five times his salary in common stock of the Company (far before the Chapter 11 petition filing date).  Since the Chapter 11 petition filing, Trudeau has further shown his lack of care to abide by the compensation plan rules, selling 95% of the puny amount of common stock he did have, as if he felt the right to break the compensation plan rules even more after throwing shareholders under the bus.  BHG proposes the appointment of certain new Company and board management, including the Chairman of the Board (on grounds of ultimate responsibility for not holding officers and directors accountable for compensation plan requirements of minimum common stock holdings), Chief Executive Officer, Chief Financial Officer, noting that these may be interim positions until a more long-term plan can be formulated.  If necessary, BHG posesses contacts who are immediately able to fill those positions (some, willing to take majorly equity-based compensation), even if on a short-term basis.

BHG is moving for an immediate management and board reform with the goal of setting the Company on a path for success while preserving shareholder value.  The current management neglected many, many routes of preserving shareholder value, and used the less lethal threat (and path of least assurance of a distribution to existing equity holders) of Chapter 11 reorganization over Chapter 7 liquidation.  BHG believes that, if equity cannot seal an advantageous deal, creditors should scavenge for value just as much as equity holders, leaving a Chapter 7 liquidation the only way to prove out true actual value of assets and subsequent true shareholder's equity.  The Company's management attempts to portray insolvency by turning over all equity interests, which in no way proves that there is a shortfall of asset value causing insolvency, and only leaves management with a much more debt-free balance sheet (and, subsequently, a much more valuable allocation of post-reorganization stock for management).  BHG has also proposed that the terms of the RSA be structured by a financial expert representing the interests of all parties and stakeholders, including shareholders.  BHG further believes that far less creditors need be impaired in order to emerge from reorganization as a much stronger entity.  They believe that neither the existing Company management, nor the Board of Directors, are or will adequately represent shareholder interests, given they – with no care – have already vouched to extinguish shareholder value, while enriching existing Company management with the 10% allocation of common stock in the reorganized Company as part of the Management Incentive Plan included in the existing RSA proposal, which – as of now – virtually no parties support, except those receiving highly preferential treatment.

"We've made numerous attempts to contact Company management and the Board of Directors, requesting that the Company make immediate and significant board and management changes due to management's refusal to respond to shareholder inquiries, including offerings of financing opportunities by shareholders whom I personally know," says Alexander Parker, Senior Managing Director of The Buxton Helmsley Group, Inc.  "The Company expressly admitted at the December 16th, 2020 equity committee appointment hearing that they have not attempted numerous paths to preserve shareholder equity.  Specifically, there has been no attempt by the Board of Company management whatsoever to sell the Company, as admitted in that hearing.  Management has made it very clear they that they chose the restructuring plans that enrich themselves with a 10% allocation of the post-reorganization entity, and not only started the negotiations for shareholders at zero, but admitted to being on the side of creditors from the get-go.  They claim the company is insolvent without having proved it in any way, shape, or form.  It is very clear the shareholders are no longer being represented; that is a mere fact the Company told the shareholders at that hearing.  We look forward to communicating the nominees for director and executive positions in the weeks to come," said Parker.

In the event management does not voluntarily resign, they will be – after the forcible removal and institution of replacement board members – fired for cause on grounds of breach of fiduciary duty (expressly admitted at the December 16th court hearing), when – under the terms of their reorganization-related retention bonus terms – their bonuses will be clawed back.  In anticipation of friction in instituting the management and board changes, Buxton Helmsley is preparing to imminently call for an immediate "extraordinary general meeting" (as defined by Section 178 of the Companies Act of 2014, or the "Act") to hold a vote for the immediate institution of a majority of directors selected by BHG, which would include Mr. Parker and other large shareholders (apart from BHG) supporting BHG's reform efforts.

Shareholders supporting the described actions contemplated by BHG should immediately e-mail mnk@buxtonhelmsley.com for required materials to legally exercise the power of their shares in support of the shareholder meeting and the contemplated actions.

The full letter to Mallinckrodt shareholders is available at www.ReviveMallinckrodt.com.

**About Buxton Helmsley:** The Buxton Helmsley Group, Inc. ("BHG") is a premier financial service, asset management and securities research firm, providing an array of services to a diversified group of individuals, corporations, trusts and other entities. The firm is headquartered in New York City.

The Buxton Helmsley Group, Inc. (together with certain of its affiliates and clients, the "Participants") intends to file with the Securities and Exchange Commission (the "SEC") a definitive proxy statement and accompanying form of proxy to be used in connection with the solicitation of proxies from the shareholders of Mallinckrodt plc (the "Company") in connection with an "extraordinary general meeting" (as defined by Section 178 of the Companies Act of 2014, or the "Act") of the Company (the "General Meeting"). All shareholders of the Company are advised to read the definitive proxy statement and other documents related to the solicitation of proxies by the Participants in respect of the General Meeting when they become available, as they will contain important information, including additional information related to the Participants, their nominees for election to the board of directors of the Company and the General Meeting. The definitive proxy statement and an accompanying proxy card will be furnished to some or all of the Company's shareholders and will be, along with other relevant documents, available at no charge on the SEC website at http://www.sec.gov/ and will be available upon request from the Participants' proxy solicitor, soon to be announced.

**Disclaimer:**  This material does not constitute an offer to sell or a solicitation of an offer to buy any of the securities described herein in any state to any person. In addition, the discussions and opinions in this press release are for general information only, and are not intended to provide investment advice. All statements contained in this press release that are not clearly historical in nature or that necessarily depend on future events are "forward-looking statements," which are not guarantees of future performance or results, and the words "anticipate," "believe," "expect," "potential," "could," "opportunity," "estimate," and similar expressions are generally intended to identify forward-looking statements. The projected results and statements contained in this press release that are not historical facts are based on current expectations, speak only as of the date of this press release and involve risks that may cause the actual results to be materially different. Certain information included in this material is based on data obtained from sources considered to be reliable. No representation is made with respect to the accuracy or completeness of such data, and any analyses provided to assist the recipient of this presentation in evaluating the matters described herein may be based on subjective assessments and assumptions and may use one among alternative methodologies

that produce different results. Accordingly, any analyses should also not be viewed as factual and also should not be relied upon as an accurate prediction of future results. All figures are unaudited estimates and subject to revision without notice. BHG disclaims any obligation to update the information herein and reserves the right to change any of its opinions expressed herein at any time as it deems appropriate. Past performance is not indicative of future results.

Media Contact:

Public Relations and Corp. Comm.

The Buxton Helmsley Group, Inc.

Tel: +1 (212) 561 - 5540, Option 4

SOURCE The Buxton Helmsley Group, Inc.