# EXHIBIT C

# Supplemental Shareholder Letter

J nu ry 15, 2020

De r Fellow Mallinckrodt Shareholders:

The Buxton Helmsley Group, Inc. (together with certain of its affiliates and clients, "BHG" or "we"), the New York City-based investment advisor to clients with significant, and increasing, holdings of Mallinkcrodt Plc. ("Mallinckrodt" or the "Company") common stock (OTC: MNKKQ), issue this letter with the backing of other various significant shareholders in full support of its contemplated actions.  BHG was behind the initial *Motion for Appointment of an Equity Committee* filed onto the docket of the pending Mallinckrodt Chapter 11 case in the District of Delaware United States Bankruptcy Court, before we began collaborating with the later *ad hoc* equity committee.

BHG was founded in 2014 and is primarily focused on investing in equity securities with immense unrealized market value (commonly known as "deep-value" investment opportunities).  We have substantial experience evaluating securities and deploying our capital into such opportunities.  We have retained an interest in Mallinckrodt stock as far back as 2017.

As long-term oriented value investors, we have been watching Mallinckrodt's current Board and management team run the stock into the ground (especially, throughout 2020) due to their very apparent choice to throw in the towel on resolving issues in a way that attempts to preserve shareholder interests in any way at all.  With the restructuring proposal/plans (commonly referred to as the "Restructuring Support Agreement" or "RSA") recently submitted by management, they could not have illustrated their bad faith more clearly:

  - The current RSA attempts to extinguish all existing equity interests;

  - Turn over all shareholder equity value to a very select group of bondholders;

  - Equitize liabilities far more than necessary (and far more than previously stated to be necessary by management themselves) to emerge from bankruptcy with a cakewalk of a balance sheet at the expense of their shareholders;

  - With management also seeking to enrich themselves further by setting aside 10% of the reorganized Company's common stock for themselves (management), while presently owning just ~0.03% of the common stock at this moment;

   - Without pursuing numerous routes (including a last-resort sale of the Company) to preserve shareholder's equity;

   - And choosing the route of least assurance that shareholder's will receive the distribution they deserve, picking the route of a Chapter 11 reorganization, with a plan that starts shareholder distribution negotiations at zero, while a Chapter 7 liquidation would ensure true value is realized for all stakeholders, without prejudice;

At present, your equity interests are set to be extinguished in entirety due to a Board and management who expressly stated in the recent December 15th and 16th hearings

(on the motion for appointment of an official equity committee in the pending Chapter 11 case) that they now are representing the interests of not you (their shareholders), but our creditors, attempting to substantiate that abandoning of your interests through citation of Irish law and their groundless c aim of being "hopelessly insolvent", despite touting a sizable ~15% (~$1.5 billion) margin of shareholder's equity in the Company's certified financial statements leading up to the Chapter 11 petition filing.

Since the Chapter 11 reorganization filing, Chief Executive Mark Trudeau has sold ~95% of his stock in our company.  Not only that, but – throughout 2020 – he was never in compliance with the corporate governance requirement to own five times his annual salary in common stock.  As of the Chapter 11 petition filing date, he owned $157,587 of common stock in the Company, while he was required to own $5.25 million of common stock in the Company (based on his salary of $1.05 million).  Directors have mirrored the same action, further proving their abandoning of shareholders long before even the Chapter 11 petition date, with 11 out of 12 directors incompliant with the compensation plan requirement to own five times their cash retainer in common stock.  The Chairman of the Board, despite meeting that requirement himself, failed to hold our officers and directors accountable to the same requirement, causing them to feel okay with attempting to extinguish common stockholder interests so easily (being in no material way invested themselves), which is the basis for our moving here to also replace the Chairman of the Board position as well.  We, as shareholders, all have reason to be worried, and we are the only one who can change this disaster of a situation for common stockholders, through supporting the actions proposed in this letter.

You all have a reason to be outraged, as is well apparent through the countless shareholder letters that have flooded the docket of the pending Chapter 11 case, and the endless letters and phone calls my firm has received over the past couple months.  Management is now talking out both sides of their mouth in many ways, stating they are "hopelessly insolvent", while settlements are on the table at this very moment to alleviate all litigation headwinds of the company, while they long claimed they believe they have no realistic liability in the opioid or Acthar-related litigation, after having touted a ~15% (~$1.5 billion) margin of shareholder's equity in the Company's pre-petition 10-Q filing, with nearly ~$1 billion in cash on hand, and while having a pipeline full of promising eventual drugs and treatments that they now are trying to dismiss as worthless, including a drug (StrataGraft) set for PDUFA approval in early February.  That drug, and this entire company, that all shareholders were the ultimate backbone of existing, will be turned over to a group of bondholders without the support of the actions proposed in this letter.

Upon management very clearly leaking their contemplated throwing in the towel with their Chapter 11 filing (clearly insiders tipping off the press multiple times prior to the actual Chapter 11 petition filing), my firm wrote the board of directors, very clearly stating that we would put a halt to their efforts if shareholders were abandoned.  We are keeping to our word and doing just that now.  Sticking up not only for BHG's clients, but all shareholders at this table.  Not just in the court, but also here.  We are asking for your full support to restore a Board and management with ethics and a true foundational wish to ensure the preservation of shareholder interests.  A leadership that will seek to investigate every possible route to avoid destroying billions in retirement value any more than they already have.  More importantly, a leadership team that will attempt to *restore* those retirement assets of many that were so carelessly destroyed.

What this Company needs is management that puts their money where their mouth is.  This is why my firm is calling for a shareholders meeting to ultimately appoint

management that does just that and does not choose the easy route at the ultimate expense of their shareholders.

At the recent December 15th and December 16th, 2020 hearings, the valuation expert hired by the *ad hoc* equity committee, after extensive analysis, concluded Mallinckrodt equity is conservatively worth ~$11/share and – with full tax-shield benefits – upwards of $30/share, more optimistically.  Being that the company is extraordinarily consistent in producing profits, is beautifully cashflow positive, and has the bright future with the promising pipeline of drugs to be approved beyond those already producing revenue, the company historically traded well over the book value of equity (at times, as much as four times the book value of equity, as seen in the chart below) before the dark cloud of opioid-related litigation and management spooking the market with their many leaks of Chapter 11 threats.  The dark clouds of Mallinckrodt are nearly fading with settlements on the table where equity could emerge virtually unscathed, but management would rather use them as an excuse to clear their slate and restore shareholder morale by throwing the current (very understandably, angry) shareholders out and handing over not only our equity to a new constitutency, but also handing them millions upon millions in restated bonds beyond the billions in shareholder's equity value that management certified existence of just a quarter or so ago.



This letter is to ask for your support in restoring the equity value of not just BHG's clients, but all shareholders, through the appointment of new directors who have a truly vested interest in this Company (including myself) as significant shareholders, which consist of individuals who have an actual equity interest in this company, and who would actually be negatively impacted in the instance of the "solution" being orchestrated by our management now.  After the appointment of a majority of directors nominated by my firm, I am prepared to, if necessary beyond an interim role as Chairman of the Board, step in as an interim Chief Executive Officer (until resolution of the issues at hand) alongside a soon-to-be selected and nominated seasoned corporate executive who has led multiple multi-billion dollar companies as an acting Chief Financial Officer through struggles such as that of what we are facing, to get this

company on track for long-term success and subsequent prosperity, putting these dark times behind it. Through the network possessed by both replacement executives, and through collaboration with a truly invested board, shareholders will be able to rest at night knowing that management is in place that will not abandon their interests. **Further, unlike our current Chief Executive, if I am required to step in as an executive, I will put my money where my mouth is, not taking massive cash compensation and bonuses, but instead electing a base of equity-based compensation. If you as a shareholder do not thrive, neither will Buxton Helmsley clients, to whom I also have fiduciary duty. As a director (and alongside those other directors which my firm seeks to nominate for your vote to appoint), I will also work with the board to institute equity incentive plans for the new management that realign management with the interests of shareholders.**

Many are likely wondering what would be done differently with this contemplated change of management. For example, our investment bankers and restructuring advisors chosen by management (chosen likely only because of the massive 10% proposed management post-reorganization stock allocation) admitted to never even remotely pursuing a last-resort sale of the Company. This Company would require a very minimal capital injection from an outside entity, if absolutely required, and an outside entity would surely be interested in the equity of Mallinckrodt at the right price. That sale to an outside entity would be an absolute last resort, however. Through connections with other significant Company shareholders which BHG seeks to nominate as directors, we would explore many financing avenues to satisfy the settlements possible and leave the company with a much more ample cushion of capitalization and liquidity. It came to my firm's attention through connecting with shareholders post-reorganization that there were many financing opportunities proposed by shareholders to investor relations and management that were never even responded to. This management was more than ready to wipe our interests out well before the Chapter 11 petition filing and was no longer answering to or representing their shareholders far before they filed for reorganization. Further, we will seek to make fair deals with the opioid and Acthar plaintiffs, recognizing their claims, but also ensuring they understand that being fair is a two-way street in such deal-making. If settlements of claims are not possible due to less than fair settlement requests, we will resort to not Chapter 11 proceedings, but Chapter 7 liquidation proceedings, and we will not enter those proceedings with any settlement proposals on the table. Shareholders will, either way, leave this reorganization knowing that maximum value was seen by our assets, and that their equity value was, either way, maximized. This management went into our Chapter 11 proceedings wheeling and dealing with our creditors and plaintiffs to merely preserve their paychecks, which is the exact opposite of what should have been done. If those on the other side of the table cannot be fair with our Company, we will fight to the end of the day to recover value through liquidation proceedings, and those who are unfair will fight to receive any value they do, just as we have been forced to now. No shareholder would have acted like our management did going into this bankruptcy, and it is about time we have a management that acts like a shareholders and, more importantly, because they are one.

We intend to call a meeting of shareholders for the purpose of allowing shareholders to elect a group of directors who possess an actual equity interest in this Company, and those who bring both ethics and complementary skill sets that are better suited to the challenges and opportunities facing Mallinckrodt.

We look forward to communicating with shareholders about the meeting and nominees in the days ahead.

Yours Faithfully,

Alexander E. Parker
Senior Managing Director
The Buxton Helmsley Group, Inc.
for **ReviveMallinckrodt**