# EXHIBIT R

1

2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

3

IN RE:

4

MALLINCKRODT PLC, *et al.*,

5

6

7

                     Debtors.
. . . . . . . . . . . . . . . . . .

8

9

10

APPEARANCES:

.    Chapter 11
.
.    Case No. 20-12522 (JTD)
.
.    Courtroom No. 5
.    824 North Market Street
.    Wilmington, Delaware 19801
.
.    December 22, 2020
.    10:00 A.M.

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE

11

For the Debtor:

12

13

George Davis, Esquire
LATHAM & WATKINS
885 Third Avenue
New York, New York 10022

14

- and

15

16

Michael Merchant, Esquire
RICHARDS LAYTON FINGER
920 North King Street
Wilmington, Delaware 19801

17

- and -

18

19

20

Emil Kleinhaus, Esquire
WACHTELL LIPTON ROSEN KATZ
51 West 52nd Street
New York, New York 10019

21

Audio Operator:          Jason Spencer

22

23

24

Transcription Company:   Reliable
1007 N. Orange Street
Wilmington, Delaware 19801
(302)654-8080
Email:  gmatthews@reliable-co.com

25

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1    APPEARANCES (Continued):

2    For Unsecured Notes Ad
     Hoc Group:              Alice Eaton, Esquire
3                            PAUL WEISS RIFKIND WHARTON GARRISON
                             2001 K Street
4                            Washington, DC 20006

5
     For U.S. Trustee:       Jane Leamy, Esquire
6                            OFFICE OF UNITED STATES TRUSTEE
                             844 King Street
7                            Wilmington, Delaware 19801

8    For Deutsche Bank:      Jason Zakia, Esquire
                             WHITE & CASE
9                            111 South Wacker Drive
                             Chicago, Illinois 60606
10
     For Ad Hoc First Lien
11   Term Lender Group:      Michael Cohen, Esquire
                             GIBSON DUNN
12                           200 Park Avenue
                             New York, New York 10166
13

14   For Ad Hoc Revolving
     Loan Participant Grp:   Jim Johnston, Esquire
15                           JONES DAY
                             555 South Flower Street
16                           Los Angeles, California 90071

17
     For Official Committee of
     Unsecured Creditors:    Cullen Speckhart, Esquire
18                           COOLEY LLP
                             1299 Pennsylvania Avenue NW
19                           Washington, D.C. 20004

20

21

22

23

24

25

1

## INDEX

2

3  #15) Motion of Deutsche Bank AG New York Branch, as
Administrative Agent, for Limited Relief from Automatic Stay
in Order to Send Notice to Debtors [Docket No. 652 – filed
4  November 27, 2020].

5  **Ruling: 43**

6

7  #16) Application of the Official Committee of Unsecured
Creditors of Mallinckrodt plc, et al. for Entry of an Order
Authorizing the Employment and Retention of Alvarez & Marsal
8  North America, LLC as Financial Advisor Nunc Pro Tunc to
October 31, 2020 [Docket No. 690 – filed December 1, 2020].

9

10  #17) Application Pursuant to 11 U.S.C. §§ 328 and 1103, Fed.
R. Bankr. P. 2014, and Local Rule 2014-1, Authorizing and
Approving the Employment and Retention of Dundon Advisers LLC
11  as Co-Financial Advisor to the Official Committee of Unsecured
Creditors Nunc Pro Tunc to October 31, 2020 [Docket No. 691 –
12  filed December 1, 2020].

13  **Ruling: 48**

14

15  #18) Ad Hoc Committee's Motion for Order Directing the
Appointment of an Official Equity Committee Pursuant to
Section 1102 of the Bankruptcy Code [Docket No. 763 – filed
16  December 8, 2020].

17  **Ruling: 49**

18

19  EXHIBITS                                          I.D.   REC'D

20  Declaration of Brendan Hayes                              9

21  Agents Exhibit     Credit Agreement                      10

22

23

24

25

1   (Proceedings commence at 10:01 a.m.)

2   THE COURT:  Good morning, everyone.  This is Judge

3   Dorsey.  We are on the record in Mallinckrodt PLC; Case No.

4   20-12522.  I'll go ahead and turn it over to debtors' counsel

5   to run the agenda.

6   MR. MERCHANT:  Good morning, Your Honor.  Michael

7   Merchant of Richards Layton & Finger on behalf of the

8   debtors.

9   Your Honor, I believe a number of orders were

10  entered by Your Honor on the last two days.

11  So, the first matter to actually address on the

12  agenda isn't until agenda item 15.  But before going there, I

13  believe Mr. George Davis is on the line and wanted to update

14  the court as to the status of certain matters in the case.

15  THE COURT:  All right, Mr. Davis.

16  MR. DAVIS:  Good morning, Your Honor.  Can you

17  hear me okay?

18  THE COURT:  I can. Thank you.

19  MR. DAVIS:  Terrific.  All right.

20  Good morning, Your Honor.  The debtors would like

21  to begin with a brief update following the court's decision

22  last week regarding the debtors' request to pay certain fees

23  and expenses of the RSA professionals.

24  At the December 14th hearing, we announced on the

25  record an agreement among various parties, including the OCC

1  and the governmental plaintiff groups concerning our

2  adjournment at the motion to appoint a future claims

3  representative and the OCC's motion to compel the

4  establishment of an opioid claimant bar date, which adjourned

5  those motions to January 28th, subject to certain conditions.

6         The parties agreed to that adjournment to

7  facilitate a mediation on the allocation of the opioid trust

8  assets between December 14th and January 28th.  One of the

9  provisions of that agreement was that the debtors would file

10 a motion to appoint Ken Feinberg as mediator, no later than

11 December 21st.

12        We did not file that motion yesterday because of

13 the intervening events.  We need to ensure that the necessary

14 parties to the mediation will be in a position to

15 participate.  It did not make sense to us to file a motion

16 seeking to appoint and pay the fees and costs of the mediator

17 unless we could position the mediation to be fruitful.

18        The debtors want to ensure that the cost

19 associated with the mediator appointment to spend when the

20 mediation will occur.  In light of this development, we've

21 been working with the RSA parties for the past week on a path

22 forward, which we have now decided upon.

23        We will file two motions: the motion to appoint

24 Ken Feinberg as mediator and a motion to assume in a limited

25 instance to enter into reimbursement agreements with our RSA

1  professionals that, in our view, will heed the court's ruling

2  on the prior motion.

3      Our current intention is to file those motions

4  this week.  As part of our filing, we will seek to have the

5  two motions heard on shortened notice, hopefully, with a

6  hearing the first week of the new year, depending upon the

7  court's availability.

8      If the court approves the fee assumption motion,

9  as well as the mediation motion, we will then be able to

10  begin opioid allocation mediation immediately upon entry of

11  those orders.  We should also note that with regard to the

12  stipulation we read into the record last week, we need to

13  work out a few modifications to the dates we announced.

14      Given that mediation will not start for a few

15  weeks, the anticipated January 28th date, the end date for

16  mediation, subject to extension, and the February 28th date,

17  the earliest date for filing a plan that includes an opioid

18  claimant allocation likely need modification depending upon

19  when the hearings will be set and the mediation can start.

20      We're in the process of working out these new

21  dates with the OCC, the governmental plaintiffs and the other

22  parties and will confirm the new dates as part of filing the

23  mediation motion.

24      Importantly, we currently do not intend to extend

25  any of the plan related RSA milestones.  If we're unable to

1   reach agreement on new dates, we'll be back in front of Your

2   Honor needed to set dates for the FCR and opioid bar date

3   motions, but we believe we should be able to work these

4   issues out among the parties.

5          We're not asking Your Honor for approval of any of

6   these items today. We simply wanted to give Your Honor and

7   other interested parties an update on how we intend on moving

8   the cases forward over the next few days.

9          Unless Your Honor has any specific questions or

10  any other parties in interest wish to be heard on this topic,

11  we can turn to the rest of the agenda now.

12         THE COURT:  I don't have any questions.  I'll wait

13  to see the motions once they get filed.

14         Does anyone else wish to be heard?

15     (No verbal response)

16         THE COURT:  All right, we can go ahead with the

17  rest of the agenda.  Thank you, Mr. Davis.

18         MR. DAVIS:   Thank you, Your Honor.  I'll cede the

19  podium, the virtual podium to Mr. Kleinhaus.

20         THE COURT:  Okay.

21         MR. KLEINHAUS:  Good morning, Your Honor.  Emil

22  Kleinhaus from Wachtell Lipton Rosen & Katz.  Our firm is co-

23  counsel for the debtors, including for certain financing

24  matters.  I'll be speaking for the debtors on the motion of

25  the administrative agent for relief from the stay which is

1  docket number 652.

2          We have conferred with the movant and the parties

3  that filed joinders and I think we have a consensus on the

4  approach for the hearing which is that there's one witness

5  who filed a declaration.  That's Brendan Hayes.  His

6  declaration is at docket number 842.  The declaration of

7  Brendan Hayes in support of debtors' objection to motion of

8  first lien administrative agent for relief from the automatic

9  stay.

10          That declaration which was filed along with the

11  debtors' objection the debtors would propose to move that

12  declaration as Mr. Hayes' direct testimony, treat the

13  declaration as his direct testimony.  And we have conferred

14  with the other parties on that, and I'll let them speak for

15  themselves, but I think we have agreement on that point.

16          THE COURT:  Is there any objection to the

17  introduction of the declaration into evidence?

18          MR. ZAKIA:  Your Honor, this is Jason Zakia of

19  White & Case on behalf of the administrative agent.

20          Mr. Kleinhaus is correct, we did confer and we do

21  not object.

22          THE COURT:  All right.  Anyone else?

23          MR. COHEN:  And, Your Honor -- yes, Your Honor,

24  Michael Cohen, Gibson Dunn & Crutcher on behalf of the ad hoc

25  first lien term loan lenders.

1          We too joined in the motion and conferred with the

2    debtors on this matter and do not object to the admission of

3    the declaration.

4          THE COURT:  All right.

5          Anyone who does object to the introduction of the

6    declaration?

7       (No verbal response)

8          THE COURT:  All right, it's admitted without

9    objection.

10      (Declaration of Brendan Hayes, received into evidence)

11         THE COURT:  Let me ask everybody if you're not

12   speaking, can you please mute your phones because when others

13   are speaking and you leave your line open, it creates

14   feedback and sometimes it's hard to hear people.  I'd

15   appreciate that.  Thank you.

16         MR. KLEINHAUS:  Your Honor, I believe that is the

17   sum total of the evidentiary portion of the case here, so

18   with that declaration admitted into evidence, I would propose

19   to turn over the podium, the virtual podium to either the

20   movant or the lenders.

21         THE COURT:  Well, let me ask if anybody wants to

22   cross-examine Mr. Hayes?

23         UNIDENTIFIED SPEAKER:  No, Your Honor.

24         THE COURT:  Okay.  All right.

25         Let's go ahead then.  Thank you.

1        MR. ZAKIA:  Thank you very much, Your Honor.

2   Again, Jason Zakia of White & Case on behalf of the agent.

3        One small evidentiary point which I'd like to add

4   that, again, we conferred with counsel for the debtors.

5        We filed at docket number 653, a copy of the

6   credit agreement which both parties had cited to in the

7   moving papers.  And I believe, although the debtors can

8   confirm, we've agreed to stipulate to the admission of the

9   credit agreement.

10       THE COURT:  Any objection?

11       MR. KLEINHAUS:  I do confirm for purposes of this

12  hearing only that that credit agreement, we have no objection

13  to using. Thank you.

14       THE COURT:  All right, admitted for purposes of

15  this hearing only, without objection.

16     (Agent's Exhibit, Credit Agreement, received into

17  evidence)

18       MR. ZAKIA:  Thank you, Your Honor.

19       Before I walk through the applicable standard on

20  our motion to lift the stay, I think it's important that I

21  take a moment to address exactly what relief is and is not

22  being sought by the motion.  Because I think it's critical to

23  the court's ability to evaluate the applicable legal

24  standard.

25       To be clear, this motion seeks very limited relief

1  from the automatic stay to authorize the agent to send a

2  notice which has the effect of preserving the administrative

3  agent and the lender's rights to later argue at the

4  appropriate time in the case for the applicability of the ABR

5  rate of interest, as opposed to the current LIBOR rate of

6  interest.

7        What we are not seeking, and I think this is

8  important, is we are not asking the court to adjudicate in

9  connection with this motion our entitlement to any rate of

10  interest or any amount of interest.  And that's important

11  because the legal standard which governs lift stay motions in

12  this district have three factor tests.  And the first two, I

13  think, we can discuss together which is a balancing of the

14  harms between the estate and the creditor.

15        And what we are seeking to with this motion is to

16  simply preserve, really the status quo, by allowing us to

17  continue to have the right to assert that the higher rate of

18  interest applies.  Why is that important?

19        Because we believe ultimately, in connection with

20  confirmation, or at some other point later in the case, the

21  court will have to determine the proper amount of the secured

22  lender's claims for post-petition interest.  But that doesn't

23  need to be done today.

24        The credit agreement provides that upon an event

25  and continuation of an event of default, the debtors no

1   longer have the ability to select between the ABR rate and

2   the LIBOR rate.  And upon expiration of the applicable

3   interest period, the applicable rate would convert to the ABR

4   rate.  But it also provides that in order for that to happen,

5   the notice must be sent.

6           And so, all we are seeking is the court's

7   permission to send that notice so that when the ultimate

8   merits of -- and the debtors have raised in their objection

9   various arguments as to why they do not believe it is

10  appropriate for the ABR rate to be applied.  And even if the

11  court grants the motion and the notice is sent, all of those

12  arguments will be preserved.

13          The only effect of the granting of this motion and

14  the sending of the notice is the debtors will not be able to

15  argue that the agent or the lenders somehow waived their

16  right under the contract to seek this interest rate by

17  failure to comply with the contractual provision providing

18  for the sending of a notice.  That's it.

19          And so, when we look at that what is the harm to

20  the estate?  Unlike the EFH case which is discussed at length

21  in the papers where Judge Sontchi found that the lifting of

22  the stay would result in the immediate departure from the

23  estate of, at least, a half a billion dollars.

24          This lifting of the stay, if the court is to grant

25  it, will not result in any one dollar immediately leaving the

1  state.   The notice will not change. The amount of interest

2  currently being paid by the debtors.  And, again, it will not

3  determine in any way the appropriate amount of interest.

4  That will be reserved for the court to determine at a later

5  time.

6         So, as a result when looking at the first factor

7  of the lift stay test, prejudice to the estate, we would

8  suggest that there is no prejudice to the estate.

9         Compare that with the potential prejudice of the

10  continuation of the stay to the creditors.  If the does not

11  lift the stay and the agent is precluded from sending the

12  notice, provided for under the credit agreement, the debtors

13  will contend that that failure to meet the condition

14  precedent under the credit agreement is game over.  And that

15  the court will not be able to even reach the substantive

16  arguments as to whether the ABR rate is or is not

17  appropriate.

18         That tremendously prejudices the creditors here.

19  And, in fact, courts have recognized that in cases where the

20  automatic stay would permanently deprive a creditor of the

21  ability to be heard on its claim, lifting the stay is

22  appropriate.

23         And so, when we look at the effect of the relief

24  we're asking you to grant here, Your Honor, on the one hand

25  we're simply balancing whether the debtors can use the stay

1  to argue that in some way the lenders have waived the right

2  to even ask for this rate of interest as against our ability

3  to simply assert the claims before this court, at the

4  appropriate time, and Your Honor will have the ability to

5  rule on the merits as to whether the court believes what the

6  appropriate amount and rate of interest due to the lenders

7  is.

8        So when you balance the potential of a forfeiture

9  against the complete reservation of the merits of the issue

10 for the court to determine.  We believe that that balance

11 strongly favors lifting the stay and preserving the ability

12 to assert the argument at a later time.

13       The third factor, Your Honor, that courts have

14 looked to in determining whether to exercise their discretion

15 to lift the stay is a likelihood of success on the merits.

16 And, again, I think it's important that we look to what

17 exactly that means in the context of this limited relief that

18 we're seeking.

19       We are not asking the court to adjudicate the

20 amount or rate of interest or our entitlement to the ABR

21 rates.  That's not the success on the merits that's being

22 dealt with by this motion.  In fact, success on the merits in

23 the context of this motion is quite easy, and I would submit

24 the facts are undisputed.  The only real question is if the

25 court were to remove the imposition of the automatic stay and

1    grant the relief, do we have the contractual right to send

2    the notice which we are asking the court for permission to

3    send.  And I believe there's no question that under the

4    credit agreement the lenders have the right to send such a

5    notice upon the occurrence of a continuation of an event of

6    default.

7              Now, the debtors argue that in order to satisfy

8    the likelihood of success on the merit standards, we need to

9    show that we are ultimately entitled to prevail on this rate

10   of interest.  Again, Your Honor, we believe that that is

11   incorrect and that is a question for another day.

12             But even if Your Honor disagreed with me and

13   thought that the appropriate inquiry on a success of the

14   merit's standard was to look at the underlying question of

15   entitlement to the interest, it's important to recognize that

16   at this stage, when all we're talking about is lifting the

17   stay to send the notice that likelihood of success on the

18   merits bar that needs to be clear it is quite low.  In fact,

19   courts in this district have discussed that standard as being

20   having a non-frivolous argument and that makes sense.

21             Prototypical different example of how this arises

22   is many times people come to the bankruptcy court and ask for

23   permission to lift the stay so that they can litigate their

24   claim in state court and have the amount liquidated.  And it

25   is not the case that in order to get that relief to lift the

1  stay the litigant must prove to the bankruptcy court that

2  they're going to win.  They just need to show that there's a

3  colorable argument.

4         And so, even if the court did view the ultimate

5  merits of the entitlement to the interest has the appropriate

6  inquiry, given the low bar we submit there is no question for

7  the reasons discussed in the papers that there is a live and

8  non-frivolous dispute as to those issues.  And, therefore,

9  even if you looked at it that way, we've met that standard.

10        So, in sum, Your Honor, the way to look at this

11 motion is the court has two choices.  It can grant the

12 motion, allow the agent to send this notice, and preserve

13 everybody's rights for another day.  And the court will have

14 the ability to fully hear everybody out and litigate and

15 adjudicate the question of what the appropriate rate and

16 amount of interest is.

17        That's the course that we would urge the court to

18 take.  It prejudices no one.

19        The alternate course is to follow the debtors

20 proposed path, deny the motion and create a substantial risk

21 that the court will effectively be tying its hands because

22 when we get to the point or we would, otherwise, litigate the

23 lender's entitlement to the ABR rate of interest, the

24 threshold argument will be raised they didn't even ask for

25 it.  And the contract provides how they are to ask for it.

1       And we would submit, Your Honor, that the

2   equitable and fair result here is not to effectively hoist a

3   waiver upon us by prohibiting us from following the

4   contractual mechanism for, at least, requesting this rate of

5   interest.  And we would submit that the court should allow

6   the notice to be sent, should modify the stay for that

7   limited purpose.

8       I'm happy to answer any questions the court has,

9   but that's what I wanted to say, Your Honor.  Thank you very

10  much.

11      THE COURT:  And if I was to grant the motion for

12  the limited purpose of providing the notice, what would be

13  the procedural mechanism down the road to decide the ultimate

14  issue which is whether or not you can charge the ABR rate or

15  the LIBOR rate?

16      MR. ZAKIA:  So, Your Honor, I think in connection

17  with confirmation, you know, the debtors say they plan to

18  reinstate the debt, I don't know if that's what they're going

19  to do, but that's what their intent is.  No plan has been

20  filed.  I think in connection with the court determining

21  whether the plan should be confirmed, we would assert that we

22  were entitled to that larger -- to that higher rate of

23  interest in calculating our entitlement, and the court will

24  have the ability, at that time, to determine whether we're

25  right or wrong and fix the proper amount, the post-petition

1  interest due to the lenders.

2           THE COURT:  Okay.  Thank you.

3           MR. ZAKIA:  Thank you very much, Your Honor.

4           THE COURT:  Who's going to argue for the debtors?

5  Mr. Cohen.

6           MR. COHEN:  Your Honor, if I may.  This is Michael

7  Cohen, Gibson Dunn & Crutcher on behalf of the ad hoc first

8  lien term lenders.

9           In support of the motion, if I could be heard

10  briefly.

11          THE COURT:  Go ahead.

12          MR. COHEN:  We echo the agent's counsel's remarks

13  in full.  I will note that just as Mr. Zakia just mentioned,

14  this is also in the context of the debtors repeatedly stating

15  that they will seek to reinstate the first lien debt so the -

16  - as stated, you know, the expectation is they'll have to

17  fulfill their obligations to cure all the entitlements under

18  the credit agreement in accordance with 1123 and 1124 which

19  in this instance requires the preservation of everyone's

20  rights, and that dispute will be dealt with at a later date.

21          To, you know, to, obviously, to deny any denial

22  here would favor, would effectuate a wavier which is really

23  inappropriate in the context of that type of dispute in an

24  effect would be permitting the debtors to use the stay as a

25  sword which is wholly not permitted.

1       I will want to take a moment to just also express

2 that there's also a perspective here that this is a post-

3 petition entitlement and we believe the stay may not even

4 apply at all.  And I wanted to raise a couple of points on

5 that front, Your Honor.

6       Because when you look at Section 362(a) carefully,

7 we have to ensure to take a look and ensure that at least one

8 of the enumerated sections of 362(a) applies for the stay

9 even to be in effect.  We contend that it doesn't and that

10 Your Honor may effectively rule that the motion is moot and

11 the notice may be delivered.

12       The debtors, in their papers, concede that

13 362(a)(1), (2), (4), (5), (7) and (8) don't apply here which

14 leaves us with two potential grounds under 362(a).  I'll

15 start first with 362(a)(6).

16       And that stays any action to collect, assess or

17 recover a claim that arose before the commencement of a case.

18 You know, so you need two elements there and I'll start with

19 the fact that it requires a prepetition claim.

20       This is preserving an entitlement under 506(d) or

21 1123 or 1124.  It only can arise post-petition. And, in fact,

22 this particular issue is only arising due to the change in

23 interest periods that is happening post-petition.  So, we

24 submit that that element of 362(a)(6) cannot be satisfied in

25 any event.

1       U.S. Supreme Court has spoken in U.S. v Ron Pair

2  that, in fact, entitlements under 506(b) are post-petition in

3  nature. So, on that front, this is not a prepetition

4  entitlement.

5       The debtors cite a couple of cases that are wholly

6  prepetition in nature.  They cite Rodriguez which is, in

7  effect, the lender's claim to recover claims regarding a

8  prepetition escrow deficiency.  You know, when the lenders

9  attempted to recoup that post-petition and was deemed an

10  action in furtherance of a prepetition claim.  That's not

11  what we have here.

12       In addition, they cite TWA for the treatment of

13  rejection damages. Also, in the nature of a prepetition

14  claim.  In addition, GI Holdings, another case that they

15  cite, is looking at a prepetition indemnification right.

16       Here, there's no allowed claim. There's no allowed

17  post-petition entitlement at this juncture.  This is wholly a

18  post-petition matter.

19       And, furthermore, what we're proposing to do here

20  is not an act to recover or collect any amount, nor is it an

21  assessment of any amount.  This is simply the preservation of

22  a right today to be later adjudicated by Your Honor.  In

23  fact, there's no possible way to allow this amount, unless

24  it's adjudicated under 506(b), 1123 and 1124.  So, you know,

25  on that front, this prong of 362(a)(6) cannot be satisfied.

1          In addition, the debtors cite a number of make-

2  whole cases: <u>Solutia</u> and <u>AMR</u> which speak to notices and

3  respective prepetition claims; whereby those notices would

4  effectively, was deemed to assess the amount of a prepetition

5  claim.

6          Again, we are not -- this notice doesn't affect

7  anything and is completely and wholly preserving a post-

8  petition entitlement.  So, we don't think 362(a)(6) applies.

9          Next, the debtors cite 362(a)(3) and, again, this

10  deals with notice to -- whereby the notices deemed an act to

11  possess or control the debtors' property.  There's no such

12  possession or control happening here. We have no funds in

13  respect of this.  Your Honor will have to adjudicate the

14  merits before there's any entitlement to any monetary amount;

15  506(b), 1123, and 1124 of the debtors' protection here,

16  there's just no way we could achieve any entitlement here,

17  unless those things happen and everyone's rights are

18  preserved.

19          Again, the debtors cite <u>Solutia</u> and <u>AMR</u> on this

20  point.  Again, nothing in those cases talk about possession

21  or control.  In fact, <u>Solutia</u> specifically talked about

22  assessment of a prepetition claim, so it's wholly in opposite

23  to this matter.  And, moreover, this is not an affirmative

24  act to exercise control of the property of the estate.

25          Another case cited by the debtors, <u>THGH</u> is one

1  where the CMS, the Centers for Medicare Services, withheld

2  dollars from a healthcare provider and those are rightful

3  rebates owed to the healthcare provider, and that was a clear

4  continuation of a prepetition action and the withholding of

5  property from the debtor.

6          The agent is holding no property of the debtor on

7  this front and is simply just preserving their rights on this

8  matter.  And that's all we're asking for here is to retain

9  the status quo, pending ultimate resolution by Your Honor.

10          And with respect to the overarching stay analysis,

11  I'm not going to add anything further.  We fully join in the

12  agent's arguments on that front.

13          THE COURT:  Thank you, Mr. Cohen.

14          Mr. Johnston, you have your hand raised.

15          MR. JOHNSTON:  Thank you, Your Honor.  Can you

16  hear me?

17          THE COURT:  I can. Thank you.

18          MR. JOHNSTON:  Jim Johnston of Jones Day on behalf

19  of the ad hoc revolving lender group.

20          Your Honor, my clients also support the relief

21  requested and ask that you grant the motion.  We generally

22  agree with the points made by Mr. Zakia.

23          The point I wanted to emphasize briefly this

24  morning is how the debtors say they want (indiscernible)

25  claims in their plan.

1    They say they want to cure and reinstate so that

2  the lenders are unimpaired.  But to do that, the debtors must

3  leave the lenders legal equitable and contractual rights

4  alone.  That includes whatever rights arise under the

5  contract upon the debtors' default.

6    The debtors' resistance here to the agent's simple

7  delivery of a notice regarding the ABR rate contradicts their

8  plan for the lenders to ride through this case unimpaired.

9  Forfeiture, the debtors hope to cause is a forfeiture

10 contradicts that plan.  We submit that that is antithetical

11 to the purpose of the stay.

12    As Mr. Zakia noted the sole purpose of this motion

13 is to maintain the status quo.  So that issue regarding

14 treatment of the claim, issues regarding impairment can be

15 dealt with at a later date.

16    We submit that the agent should be permitted to

17 send this notice preserving everybody's rights, leaving the

18 issue of the actual interest rate associated with the lender

19 claims and the treatment of those claims to a later date,

20 whether that's in connection with confirmation of a plan or

21 on a standalone basis.

22    So, we would ask Your Honor to please grant the

23 motion and grant the relief that the agent has requested.

24 Thank you.

25    THE COURT:  Thank you, Mr. Johnston, anyone else

1   wish to be heard in support of the motion?

2        (No verbal response)

3            THE COURT:  Mr. Kleinhaus, are you speaking for

4   the debtors?

5            MR. KLEINHAUS:  I am, Judge.  Thank you.

6            Emil Kleinhaus, Wachtell Lipton Rose & Katz on

7   behalf of the debtors.

8            In responding to the arguments that have been

9   made, I want to start with a few points that I think are

10  undisputed and common ground.

11           The first point is that as of the petition date,

12  and as of today, there has been no allegation by these

13  lenders of any default under the credit agreement besides a

14  bankruptcy filing.  The agent and the lenders have filed five

15  different briefs and no one has said the company has failed

16  to make a payment or has reached a covenant.

17           To the contrary, the agent in paragraph seven of

18  the motion states, that the only default that's being

19  asserted is the ipso facto default under 7.01(i) of the

20  credit agreement.  That's one undisputed point.

21           A second point is that no one disputes that the

22  lenders under the cash collateral order are getting paid

23  current interest and more.  Under paragraph 4(D) of the cash

24  collateral order that the court entered, assuming the company

25  continues to elect a LIBOR based rate for euro dollar loans,

1  the company will pay interest during the case at the rate of

2  euro dollar loans, plus 2 percent.

3       So, the lenders are getting more than the contract

4  rate of interest in real time.  They're also getting all

5  their fees and expenses paid for the agent and the ad hoc

6  groups.

7       A third point that's common ground is the reason

8  why the lenders want to deliver the notice.  In particular,

9  no one has disputed; in fact, I heard Mr. Zakia say that

10 under Section 2.07(e) of the credit agreement, the notice is

11 a necessary prerequisite.  It's a gating item for the lenders

12 to force the company to change from a LIBOR based rate to an

13 ABR rate.

14      The agent concedes this in the motion as well in

15 paragraph twenty-two.  The agent says, the lender's

16 entitlement to a rate of interest at the rate for ABR

17 borrowing is contingent upon delivery of the notice.  So,

18 would each of those points undisputed, let's be very clear

19 about what the agent is asking the court to do.

20      The agent wants the court to exercise its

21 equitable discretion, because that's what lifting the

22 automatic stay is; exercise the court's equitable discretion

23 for the lender's benefit by lifting the stay so that they

24 solely on this bankruptcy filing, nothing else, just a

25 bankruptcy filing, they can take a post-petition action

1  that's necessary to cut off the debtors' contractual right to

2  elect euro dollar loans and to increase what the lenders say

3  they're owed under a credit agreement.

4          And they want the court to exercise that

5  discretion in their favor in a context where the lenders are

6  already getting paid under a court order a higher than

7  contractual interest rate, plus fees and expenses.

8          Now this relief is not justified and explaining

9  why I want to start with an overarching point in the way this

10 motion has been framed.

11         The papers submitted on the lender's side, and in

12 the argument today, everybody is using the word preserve.

13 They say over and over again, I counted twenty-one times in

14 the lender's brief, their reply brief, that the lenders are

15 just trying to "preserve the status quo."  That's the

16 lender's mantra.

17         But what they're not just trying to preserve quo

18 saying over and over again doesn't make it so.  The status

19 quo is that no notice has been delivered.  The status quo is

20 that the company has the contractual right to continue

21 electing euro dollar loans without a contravening notice due

22 to this bankruptcy filing.

23         THE COURT:  Mr. Kleinhaus, let me ask you a

24 question.

25         MR. KLEINHAUS:  Sure.

1        THE COURT:  If I was to deny the motion, are the

2    debtors going to argue down the road that, not just because

3    of the ipso facto clause, but because the lenders didn't give

4    notice as required by the contract, they are not allowed to

5    seek to change to ABR rate?

6        MR. KLEINHAUS:  Your Honor, I think that would be

7    an argument and I think that would be an argument that's

8    supported by the case law.  I mean in the EFH case is

9    extremely similar.

10        What happened in EFH is as of the bankruptcy

11    filing, there as no make-whole loan under the credit

12    agreement.  And what the lenders wanted to do, very similar

13    to what the lenders in this case want to do, is they wanted

14    to serve a notice, the effect of which would have been to

15    bring that make-whole into being.  And it's just like this

16    case, a make-whole is governed by Section 506(b), just like

17    there will be an argument here about 506(b).

18        So, they wanted to bring a post-petition -- serve

19    a post-petition notice that would have the effect of

20    increasing a claim under a prepetition credit agreement.  And

21    Judge Sontchi said without even reaching the ultimate merits

22    of the 506(b) issue of whether the make-whole would be owed,

23    he said under the balance of harms, the state should not,

24    does not -- should not be lifted to permit that kind of

25    notice because everybody bargains, sophisticated lenders

1  bargain in the shadow of the automatic stay.

2          And Judge Sontchi said that in quoted momentive

3  and said at the start of the case if the lenders have certain

4  entitlements.  Here, they have the entitlement to get paid at

5  the euro dollar rate if the company elects it.  Those are the

6  entitlements the lender has.  Everybody bargains in the

7  shadow of the stay and in the context here, in a context

8  where the only basis for serving this notice, which is a

9  contractual prerequisite to the higher interest rate, just as

10 in EFH, the deacceleration notice that the lenders wanted to

11 serve was a contractual prerequisite in order to obtain the

12 make-whole.

13         The lenders could have bargained for an automatic

14 entitlement.  They didn't.  Instead, they bargained for a

15 notice requirement.  And there's no reason when the lenders

16 don't bargain for an automatic event, like an automatic

17 acceleration, and their credit agreement says we showed in

18 our brief in which the turnover from LIBOR to ABR occurs

19 automatically upon a default.  But what the lenders don't

20 bargain for an automatic additional rate which then can be

21 disputed under 506(b) and the like, but when the lenders

22 bargain in the shadow of the automatic stay and they agree to

23 accept a notice requirement.

24         And in this situation what makes it even worse is

25 they want to serve the notice based solely on the debtors'

1   bankruptcy filing, the court, Judge Sontchi said in <u>EFH</u> in

2   its discretion there's no reason why the court should

3   essentially let the lenders change the status quo of the

4   petition date.

5          I mean the lenders are making what I'll call the

6   slice of salami theory which is they're only trying to cap

7   the salami now.  The rest of the salami we can

8   (indiscernible) out later, and, therefore, it's okay.

9   Nothing to see here.

10          THE COURT:  Can't I enter an order that would say

11   you can go ahead and send your notice but I'm going to

12   preserve the debtors' right to argue that under the Code, the

13   sending of that notice was improper?

14          MR. KLEINHAUS:  Well, I think it would depend on

15   what the order said, Your Honor.  I think if the order said

16   you're reserving your rights under Section 363(l) which deals

17   with ipso facto clause as in Section 506(b) to argue that

18   there should be no additional interest, those arguments we

19   have anyway.  So, I don't think that order would fully

20   preserve the debtors' right.

21          I think if the court entered an order saying

22   whether you serve the notice or not, I'm not deciding whether

23   or not the stay should have been lifted -- I'm reserving on

24   the issue of whether that would have violated the stay and,

25   therefore, be void.  And I'm going to consider all issues at

1  once.  That would be a way potentially to preserve the

2  debtors' rights.

3         Our view is that, as Judge Sontchi did in EFH,

4  there's no good reason for the court in its equitable

5  discretion to essentially relieve the lenders for their

6  bargain, especially in a situation where they're trying to

7  juice their claim in response to a bankruptcy filing.

8         So, this relief should be denied as to similar

9  relief in EFH was denied.  But if the court is going to enter

10 any kind of order in response to this motion, we would

11 suggest that the order could maybe punt on the issue.  That

12 wouldn't be what we ask the court to do, but could punt on

13 the issue and say, I'll decide later whether this notice was

14 void as a violation of the automatic stay when I decide all

15 the other issues.

16        That would actually preserve the debtors'

17 entitlements fully as it would the lenders.  And I think it

18 would be essentially be a punt.  But what we respectfully ask

19 the court not to do, you know, is let them cut half the

20 salami.  I was going to use that football analogy if the

21 court prefers.

22        They're basically saying well the court should

23 allow us to get our first down, but you're not getting all

24 over the end zone so there's no act here.  I mean the stay,

25 362 speaks in terms of an act and I'm going to get into

1  (8)(b)(6) and (a)(3).

2              And they clearly serve in a notice that --

3              THE COURT:  Mr. Kleinhouse, you're -- it's getting

4  worse, but when you speak there's a crackling sound on the

5  phone.  I don't know if you're too close to the speaker or

6  what it is, but if you --

7              MR. KLEINHAUS:  I apologize, Your Honor.  Maybe

8  I'll just pick-up the phone.

9              THE COURT:  You might have to because it seems to

10  be getting worse.

11             MR. KLEINHAUS:  Okay.  Is that better everybody?

12             THE COURT:  That's much better.  Thank you.

13             MR. KLEINHAUS:  All right.  I may not look as good

14  on the screen, but that's okay.

15             THE COURT:  I was about ready to lose my mind with

16  the feedback.  So, I'm glad you picked it up.

17             MR. KLEINHAUS:  I apologize.  Should I go

18  backwards or --

19             THE COURT:  No, no.  I could understand you, but

20  it was just getting very annoying.

21             MR. KLEINHAUS:  I apologize.  I will try to be

22  less annoying.

23             So I think where I was, Your Honor, is, and I'll

24  limit it to a slice the salami analogy and a football analogy

25  basically saying we'll move -- we should be given a first

1  down.  Getting that first down is not an act to take control.

2  It's not an act or a cover, but because we're not getting a

3  touchdown.

4  I mean the statute speaks in terms of any act.  It

5  doesn't speak in terms of an act that fully effectuate what

6  the lenders want.  Looking at the kinds of precedents the

7  lenders cite, which are lawsuit cases, motions to grant

8  relief from the stay.  The consideration is whether to let

9  the lawsuit be filed.  Nobody thinks about -- no one says,

10  okay, just because you're asking to file the lawsuit that

11  doesn't violate the stay because that's just one step.  You

12  are not actually getting a judgment.

13  This is undoubtedly a step in the direction, an

14  act to -- and I will go through this in a little more detail,

15  an act within in the meeting of Section 362.  We went through

16  some potential options for the court in dealing with this

17  motion.  The debtor's position is that as in EFH the balance

18  of harms weighs heavily against allowing this act in in a

19  context where these lenders are getting their interest paid

20  currently.  They are getting fees and expenses and all they

21  are trying to do is respond to a bankruptcy filing, no

22  payment default.

23  So for that reason this act shouldn't be allowed,

24  but if the court is going to -- an alternative would be to

25  try to respond directly to the court's question to reserve on

1  the issue of the significance of the notice to later, but I
2  think in that context the debtor would ask the court to be
3  really clear that the issue of whether this notice violated
4  the stay and, therefore, shouldn't be given effect was
5  preserved.

6          THE COURT:  Well that is rub here, I think, for me
7  is I don't want to be in a position down the road where I
8  deny the relief to allow the notice to be sent and then be
9  deciding down the road whether or not the actual ABR rate
10 could, in fact, be charged which is going to relate to the
11 question of is it a violation of the code because its only
12 for purposes of the ipso facto clause which is improper and,
13 therefore, they can't charge the ABR rate.

14         I make the decision that, yes, they can charge the
15 ABR rate, but because I didn't lift the stay and allow you to
16 send the notice you are prevented from doing it because you
17 didn't give notice as required by the contract.  That is what
18 I am trying to avoid here.

19         MR. KLEINHAUS:  Well I guess, Your Honor, two
20 responses.

21         One is coming back to Judge Sontchi's decision in
22 EFH.  I think that is -- in EFH the court concluded that
23 because the notice requirement or serving the notice required
24 the post-petition action to buttress the claim it should be
25 prohibited regardless of the merits and the fact that the

1   make whole would have been owed if the notice was given that

2   did not move Judge Sontchi to conclude lets allow the notice.

3   That moved Judge Sontchi, as I read his decision, to conclude

4   the lenders didn't bargain for the ability to automatically

5   get this additional claim amount.  They bargained -- they

6   need to serve a notice to accomplish that.

7          So the court, in its discretion, in a context

8   where these lenders are getting paid in full, with interest,

9   with fees and expenses, there is no good reason to let them

10  serve that notice and then be able to make the argument,

11  even, that they are entitled to the higher interest.

12         So, the debtors do believe, Your Honor, that

13  consistent with the EFH decision, and the Solutia decision,

14  and the AMR decision the right answer here is just to deny

15  the relief because these lenders bargained for a notice

16  requirement and the court, in its discretion, should not,

17  essentially, aid them in cutting off or increasing their

18  collateral position, increasing claim amounts post-petition

19  by serving a notice.  That, I think, is the result of EFH.

20         So that, we believe, is the right answer, but an

21  alternative, if the court is inclined to, essentially,

22  consider this all later, would be to enter an order saying

23  all these issues will considered later including the

24  effectiveness of this notice vis-à-vis the automatic stay and

25  whether this notice is void under the automatic stay.  Then

1  the court can consider all issues at once.

2            But if the court just enters the relief and says

3  stay relief granted, serve the notice, I mean the court is,

4  essentially, taking away the debtors argument that they

5  bargained for this notice requirement and everybody bargained

6  in the shadow of the stay. I think the court would be

7  departing from the EFH decision and the Momenta decision

8  which said when you bargain in the shadow of the automatic

9  stay and you agree that you have to serve a notice to

10  increase a claim amount the court is not going to help an

11  over-secured lender do that and take a lender that is already

12  getting paid currently with interest plus fees and expenses,

13  plus more than contractual interest in this case and,

14  basically, let that lender serve a notice barred by the stay

15  to allocate value away from unsecured creditors for that

16  lender.

17            So, we do vehemently believe that the stay should

18  not be lifted here in the court's discretion to let the

19  lenders, basically, get past this requirement that they

20  bargained for when lots of other lenders and lots of other

21  credit agreements did not agree to a notice requirement, but

22  this lender, like lenders in these other cases, like EFH and

23  Momenta which dealt with make-wholes.

24            The notion that those cases are distinguishable

25  that's something else the lenders keep saying in their

1  briefs, but they are very, very similar.  Those are

2  situations where there is a contractual and economic status

3  quo as of the petition date, no make-whole.  The lenders want

4  to be able to serve a notice which is contractually

5  permitted.  Judge Sontchi said the de-acceleration notice

6  that is allowed under the contract.  I mean he said that in

7  some many words, but he went onto say that the parties

8  bargained in the shadow of the automatic stay.

9       Your Honor, this is a situation, again, where the

10 lenders should not be led off that bargain in requiring a

11 notice especially in a context when they're doing it solely

12 based on ipso facto clause.  So, I am going to try to avoid

13 being repetitive.

14      We have two options -- the options the debtors, of

15 course, are asking for is deny the motion, but if the court

16 is not going to deny the motion what the debtors would

17 respectfully request is that if it would be for matters --

18 for reasons of judicial efficiency or, otherwise, simpler to

19 consider all these issues at once the court let the lenders

20 serve the notice, but fully reserve on whether that notice is

21 effective and decide that issue later along with the merits

22 issues.

23      Without moving the goal post so that the lenders

24 are worse off vis-à-vis -- excuse me, that the debtors are

25 worse off vis-à-vis lenders who are already getting paid in

1 full interest plus fees and expenses.

2       THE COURT:  Well let me ask you another question;

3 what if I was to deny the motion, but its without prejudice

4 to the right of the lenders to argue later that if the stay

5 had been lifted they would have given notice and, therefore,

6 they're entitled to that ABR rate back to the time when they

7 sought to lift the stay?

8       MR. KLEINHAUS:  Yeah.  Your Honor, I think there

9 are various ways the court could, essentially, consider

10 everything at once later.  What is important to us, if the

11 court doesn't just deny the motion, which is the debtor's

12 preference, is that the basic point that I am trying to

13 articulate that the lenders did not bargain for this ability

14 to raise interest rates without a notice, and that notice is

15 barred by the law, and they bargained against in the shadow

16 of the automatic stay that the debtors reserve their right to

17 make that argument later.

18       One way to do that would be to allow -- as I said

19 before, allow the notice to be served reserving all rights as

20 to whether it violated the stay.  Another approach, as the

21 court just spelled out, would be to deny the notice without

22 prejudice and consider this relief later.  The court could

23 nunc pro tunc the relief if the court found appropriate to

24 now.

25       So that, I think, would be if the court'

1  inclination here is to say I want to consider everything at

2  once later, the merits and the stay issue, the court could

3  deny the motion without prejudice and we could argue the stay

4  issue and all these merit issues all at once at one hearing

5  later.  That is a plausible approach.

6              THE COURT:  All right.  I will tell you that is my

7  preference.  I would like to have this all decided at once.

8              So let me ask Mr. Zakia.  If I were to -- well,

9  let me ask both parties.  You understand where my position

10 is.  I want to decide this all at one time rather t hen

11 having to do this piecemeal.

12             So either we grant the relief with the

13 understanding that the debtors can later challenge that it

14 violated the automatic stay or I deny the relief without

15 prejudice to allow the lenders to seek retroactive

16 application as if they had given notice.  So either one of

17 those two options.  Frankly, I don't care which one.

18             So let me ask the parties, given that guidance

19 would you be able to go back and fashion an appropriate form

20 of order?

21             MR. ZAKIA:  Your Honor, this is Jason Zakia.

22             I am just thinking in real time here.  The one

23 thing that I think would be unfair to my client, Your Honor,

24 we filed this motion because we take the automatic stay very

25 seriously.  Obviously, violation of the automatic stay can be

1  seen as contempt of court.  We didn't want to do that.  So, I

2  would think it would be very important under any such

3  scenario that my client could have comfort that whatever the

4  court decided on entitlement to the interest we were

5  protected from any argument that we, in any way, acted

6  improperly.

7          THE COURT:  Absolutely.  I will put your mind at

8  ease on that one, Mr. Zakia.

9          MR. ZAKIA:  Okay.

10          THE COURT:  I would not (indiscernible) later.

11  Yes.  I am not going to do a gotcha on you and say you

12  violated the automatic stay and you're in contempt of court.

13          MR. ZAKIA:  Let me just take one crack at this,

14  Your Honor, because the way I heard the court articulate its

15  concern and the question it asked Mr. Kleinhouse, Mr.

16  Kleinhouse, no surprise, was very honest and forthright in

17  answering Your Honor's question, but when Your Honor said I

18  don't want to be in a position where at the end I decide, as

19  a result of ipso facto, as a result of, you know, 506, I

20  decided it actually was appropriate to give the ABR rate, but

21  the mere failure to send the notice somehow says they never

22  asked for that.

23          He was very forthright with the court and said,

24  no, that is what we want to be able to argue.  So I would

25  actually suggest, Your Honor, and I am just going to take one

1   run at this and I'm going to stop.  If Your Honor simply

2   granted the motion, and I would suggest nothing further would

3   be necessary, but if we wanted to be express we could.  A

4   hundred percent if they could still say ipso facto precludes

5   this.  A hundred percent they could still say the court

6   should use discretion to say this inappropriate default

7   interest.  All those arguments would be unimpaired even if

8   you just granted the motion.

9           I guess what I am struggling with is this last

10  piece where he is saying, well, it violated the automatic

11  stay and we bargained for the right to have the stay used as

12  the sword and not the shield.  I guess the issue that I take

13  with that, Your Honor, is that, yeah, the stay exists, but

14  the court also has, and parties bargained, in light of the

15  fact that the court has the discretion to lift the stay.

16          This is very different than EFH.  Judge Sontchi

17  found that if I sign this order half a billion dollars leaves

18  the estate tomorrow.  That, for balancing of the harms, is

19  fundamentally different then the situation we have here.

20          So, I actually think, Your Honor, Your Honor could

21  lift the stay. I don't know what we're preserving with the

22  issue that it violated the stay all along.  And the merits

23  arguments would one hundred percent be preserved.  So that

24  would be my argument to the court, but that being said if

25  Your Honor makes a decision we will abide by it and implement

1  -- you know, try to work out an order that reflects what Your

2  Honor says.  I don't know if that makes sense, but I am

3  trying to draw a distinction.

4       THE COURT:  I understand your position.  I am just

5  trying to figure out whether I deny it without prejudice or

6  grant it with the stipulation that the debtors can still

7  argue that the notice was improper.

8       MR. ZAKIA:  Well, Your Honor, on those two choices

9  I would suggest that you grant it with a stipulation so that,

10  at least, a notice can be sent and that issue is clear.

11       THE COURT:  That's fi ne.

12       MR. KLEINHAUS:  Your Honor, of those two choices I

13  think the simpler and more elegant is deny it without

14  prejudice so we will have this exact same argument.  And

15  however many months, as Mr. Zakia said, they brought a stay

16  motion and certainly the debtors aren't going to say after

17  this whole hearing that there was, you know, some

18  sanctionable violation of the stay.  We are arguing an

19  economic issue.

20       I think the simplest approach, given Your Honor's

21  guidance is deny the motion without prejudice and then when

22  the motion -- if that motion is re-noticed we will argue it

23  at the same time as the merits and then the court will have a

24  menu of options.  The court can decide the stay motion

25  against the lenders if the court decides the stay motion in

1   their favor the court will reach the merits, but the court

2   will have a lot more flexibility then.  And if the court

3   wants to grant nunc pro tunc relief, because we're all here

4   today, that will be available as well.  That strikes me as

5   the simplest approach here.

6           THE COURT:  All right.  Let me ask Mr. Johnson.

7   He's got his hand raised.  Maybe he has some insight for me.

8           MR. JOHNSON:  Your Honor, I think this point has

9   been made, but just to be clear the point isn't whether the

10  automatic stay applies.  I think that is why the agent filed

11  the motion today.  If everyone's rights are reserved, whether

12  it's through granting of the motion with the debtor's ability

13  to say that the notice is invalid because the stay actually

14  applied or whether it's through a denial of the motion

15  without prejudice to the agent arguing later on that while

16  the notice -- we tried to deliver the notice.

17          We're just going to have the same fight we're

18  having today however many months down the road.  I thought I

19  understood Your Honor to say at the outset was that that was

20  the result you were trying to prevent and that we were trying

21  to get to a place where these claims would be adjudicated on

22  the merits without the technicality of the agent's inability

23  to send the notice, but I think the agent has conceded is

24  currently barred by the automatic stay.

25          So what we would suggest the right result here is

1  to grant the motion fully preserving all of the debtor's

2  rights to say that the claim that the agent wants to assert

3  under the credit agreement is not an allowable claim in the

4  context of whatever plan treatment they propose.

5          I did want to say one thing, Your Honor, in

6  response to Mr. Kleinhouse's repeated reliance on Judge

7  Sontchi's decision in Energy Futures.  The Third Circuit

8  reversed that decision, Your Honor.  Grant it, the reversal

9  was on other grounds.  The reversal was on the interpretation

10 of the contract in the make-whole right, but the circuit made

11 very clear that it did not agree that the automatic stay

12 should put a lender in a "catch 22" of having a contract for

13 a right effective upon delivery of a notice only to have that

14 notice blocked by the automatic stay.  You can see that as

15 842 F.3d at Page 253.

16         I suggest the debtors are trying to exploit just

17 such a "catch 22" in this case and that that is

18 inappropriate.  We should get us to a place where Your Honor

19 can decide the merits of this claim without fighting over

20 whether or not this notice is effective or ineffective due to

21 the automatic stay which is really supposed to preserve the

22 status quo.

23         THE COURT:  All right.  Well we got to do it one

24 way or the other and I think I am going to agree with Mr.

25 Kleinhouse that the more elegant way to do it, I think, is to

1  deny the relief without prejudice to allow the lenders to

2  argue later that the only reason they didn't give the notice

3  was because of the automatic stay and if I find in their

4  favor later on down the road I will make it nunc pro tunc

5  back to the time when they wanted to send that notice.

6         I think that will resolve the issue, it preserves

7  it for a later date when I can consider everything all

8  together. I think that is the easier way to do it.  So, I

9  would ask the parties to confer and come up with an

10  appropriate form of order.

11         MR. KLEINHAUS:  Your Honor, thank you.  That, of

12  course, we understand the court's ruling.  I just do want to

13  emphasize that if a new motion is made after being denied

14  without prejudice we would preserve, under the court's order,

15  all the arguments that the stay should never be lifted.  So

16  we're, essentially, back to where we started today plus all

17  the merits arguments.  That is our understanding of the

18  court's ruling.

19         THE COURT:  Yes.  All your arguments are preserved

20  until a later date.

21         MR. KLEINHAUS:  Thank you, Your Honor.

22         THE COURT:  I want to make sure at the later date

23  we're arguing everything, not just the lift stay.

24         MR. KLEINHAUS:  Correct, Your Honor.  Our

25  understanding is we will argue whether the stay should be

1  lifted plus the merits and the court will decide it all at

2  once.

3              THE COURT:  Yes.  Thank you.

4              MR. KLEINHAUS:  Thank you, Your Honor.

5              THE COURT:  All right.  What do we have next?

6              MR. MERCHANT:  Your Honor, this is Mike Merchant

7  again from Richards Layton.  I believe that leaves retention

8  applications that were filed by the unsecured creditors

9  committee and then Your Honor's bench ruling on the equity

10 committee motion.

11             THE COURT:  Okay.  Who is going to argue the

12 retention applications?

13             MS. SPECKHART:  Good morning, Your Honor.  For the

14 record Cullen Speckhart of Cooley LLP appearing as proposed

15 counsel for the UCC.

16             Agenda Items 16 and 17 are our applications to

17 employ Alvarez & Marsal and Dundon Advisors as the

18 committee's financial advisors nunc pro tunc to October 31st,

19 2020.  Following the filing of those applications we received

20 a number of informal comments from the United States Trustee

21 and we were able to resolve those comments and to satisfy the

22 United States Trustees informal comments by filing a

23 supplemental declaration and by making requested revisions to

24 the order.

25             So we will be submitting those orders on

1  certification after this morning's hearing with the request

2  that they be entered by Your Honor and we will be able to

3  submit those orders on certification because the objection

4  that was filed on behalf of the unsecured notes ad hoc group

5  on December 18th has been resolved.

6          As to A&M and Dundon's retention for the UCC with

7  the explanation for the record that pertains to Paragraph 7

8  of the order that Paragraph 7 regards the completion fee that

9  is referenced in the A&M engagement letter and indicates the

10 circumstances under which that completion fee will be

11 payable.

12         And specifically the order provides that the

13 completion fee will be payable upon the earlier of X, the

14 confirmation of the Chapter 11 plan of reorganization or

15 liquidation, and Y the sale, transfer or other disposition of

16 all or a substantial portion of the assets, or equity of the

17 debtors in one or more transactions that result in a concrete

18 and tangible benefit to the unsecured creditors.

19         The language referencing a concrete and tangible

20 benefit to the unsecured creditors was added to the order as

21 a request of the United States Trustee to make sure that the

22 completion fee would be tied to an outcome for creditors. And

23 we would like to clarify for the record that the concrete and

24 tangible benefit in the second sub-paragraph is meant to

25 refer to a benefit to all unsecured creditors within the

1 UCC's consistency.

2        This does not refer to unsecured creditors within

3 the OCC's constituency.  So, Your Honor, the clarification

4 that I just delivered resolves the formal objection that was

5 lodged by the unsecured noteholder group as to both A&M and

6 Dundon Advisors.  And I would anticipate that Ms. Eaton or

7 one of her colleagues would be able to confirm that on behalf

8 of the objecting parties.

9        We would ask Your Honor to approve the

10 applications by entering the order so we can submit it under

11 certification following this morning's proceedings.  Thank

12 you, Your Honor.

13        THE COURT:  Thank you.

14        Ms. Eaton?

15        MS. EATON:  Good morning, Your Honor.  Alice Eaton

16 with Paul Weiss on behalf of the ad hoc committee of

17 unsecured noteholders.

18        Ms. Speckhart is correct in outlining the

19 resolution of our objection to the retention of A&M and

20 Dundon.  And I don't have anything to add to her commentary.

21        THE COURT:  Okay.  Thank you.

22        Does the U.S. Trustee have any comments?

23        MS. LEAMY:  Good morning, Your Honor.  Jane Leamy

24 for the U.S. Trustee.

25        What Ms. Speckhart read on the record correctly

1   reflects the revisions that we agreed to with respect to
2   A&M's language.
3          I just want to note that, you know, we are
4   concerned about the number of professionals.  It's not
5   typical in every case that a committee will have an
6   investment banker and a financial advisor.  We are taking a
7   close look at each of the retention applications to see what
8   the professionals are doing.  We have agreed -- we also asked
9   the professionals to agree to language, you know, taking into
10  account that they shouldn't be duplicating efforts.
11         I know that depends on the professionals
12  (indiscernible) themselves and more advisors, inevitably,
13  will be more fees, but especially in this case.  You know,
14  Your Honor has (indiscernible).  I think that the members in
15  our office will be taking a close look at all the fees.
16         THE COURT:  Thank you, Ms. Leamy.
17         Anyone else wish to be heard?
18      (No verbal response)
19         THE COURT:  All right.  I am satisfied then, based
20  on the record, that the retentions are appropriate and I will
21  enter those orders once I receive the updated form of orders
22  under COC.
23         MS. SPECKHART:  Thank you very much, Your Honor.
24         THE COURT:  Thank you.
25         All right.  I guess that leaves us with the bench

1  ruling, is that right?  Anything else before I go to that?

2          MR. MERCHANT:  No, Your Honor.

3  **18**        THE COURT:  Okay.  So this is my ruling on the

4  motion by the ad hoc committee of equity holders who moved

5  for the appointment of an official committee to represent the

6  interest, their interest in these bankruptcy cases.  The

7  appointment of an official committee is governed by Section

8  1102 of the Bankruptcy Code.

9          Section 1102 provides that a bankruptcy court may

10  appoint additional committees of creditors or equity security

11  holders upon the request of a party in interest if it is

12  necessary to assure adequate representation of those

13  interests in a particular case.  Appointment of additional

14  committees is considered extraordinary relief and should be

15  the rare exception In Re Spansion, Inc., 421 B.R. 151 at 156,

16  Bankruptcy Court District of Delaware 2009.

17          The standard for appointing an equity committee is

18  well established in this district.  The moving party bears

19  the burden of proof as well as the burden of persuasion to

20  show that there is a substantial likelihood that equity

21  holders will receive a meaningful distribution in the case

22  under a strict application of the absolute priority rule and

23  that they are unable to represent their interest without an

24  official committee, Spansion at 156.

25          Other factors may include the size and complexity

1    of the case, the likely cost to the estate of appointing a

2    committee and the number of shareholders.  If the moving

3    party fails to prove that there is a likelihood of a

4    meaningful recovery, however, these additional factors are

5    irrelevant.

6            In this case I find that the ad hoc equity

7    committee has failed to meet its burden of showing a

8    substantial likelihood of a meaningful recovery or that they

9    are incapable of representing their interest without an

10   official committee; therefore, I will sustain the debtors'

11   objections to the motion.

12           The ad hoc committee relies primarily on the

13   testimony of its expert witness William Jeffers.  Mr. Jeffers

14   testified that in a hypothetical spin-off of Mallinckrodt

15   PLC's Specialty Generics business line Mallinckrodt's

16   remaining Specialty Brands business line would have value

17   that could be attributed to Mallinckrodt PLC which is where

18   the equity interest reside.  That value is based upon a

19   discounted cash-flow analysis that shows this hypothetical

20   spin-off could result in approximately $989 million or

21   approximately $11 per share of value in Mallinckrodt PLC.

22           This is exclusive of potential tax benefits that

23   Mallinckrodt may have that could increase the potential value

24   to over $2 billion according to Mr. Jeffers.  Mr. Jeffers

25   admits, however, that he is not an expert on tax issues, does

1  not know whether the debtors have potential tax benefits or

2  if they did how any possible benefits would be applied and

3  does not rely on the tax issue in providing his opinion.

4        Mr. Jeffers hypothetical spin-off is based upon

5  the debtors own prepetition concept of filing bankruptcy only

6  for the Specialty Generics business which is where the opioid

7  related liabilities lie.  The debtors, however, presented

8  credible testimony that while they did originally believe

9  they could file just Specialty Generics business the

10  circumstances changed that made such a filing impossible.

11        First, the debtors' witnesses testified that

12  Mallinckrodt is a named defendant in most of the opioid

13  related cases filed against Generics and they have lost all

14  but one motion to be dismissed from those cases.  It is

15  unrealistic to believe debtors' assert that they could silo

16  all opioid related liabilities in the Generics business while

17  leaving enough value in the Brands business to provide a

18  return to equity.

19        The debtors' witnesses testified that while the

20  debtors have a restructuring support agreement that, among

21  other things, establishes a $1.6 billion dollar fund to pay

22  opioid claims.  The government has valued its liabilities at

23  $2.2 trillion and there is no evidence to suggest that the

24  government would simply walk away from any potential claims

25  against Mallinckrodt if, indeed, it was solvent.  Moreover,

1  Mr. Jeffers admitted he did not undertake any analysis of the

2  opioid litigation or the potential exposure faced by

3  Mallinckrodt.

4         Second, shortly before the filing debtors entered

5  into a settlement in principal with the U.S. Department of

6  justice for $260 million over litigation involving the Acthar

7  Gel product, a product owned by the Specialty Brands

8  business.  As part of that settlement in principal the DOJ

9  required that Mallinckrodt also file for bankruptcy.  Mr.

10  Jeffers was unaware of this fact.

11         Nonetheless, Mr. Jeffers assumed that if it were

12  determined that there was value remaining in Mallinckrodt

13  following this hypothetical spin-off the settlement in

14  principal with the government would remain the same.

15  Debtors' witnesses, however, testified that the settlement

16  with the government was based upon an ability to pay analysis

17  and if there was additional value the government would surely

18  seek to increase the settlement amount.

19         Moreover, Mr. Jeffers assumed that unsettled

20  private party Acthar plaintiff's claims could also be settled

21  for the same $260 million amount.  Mr. Jeffers admits,

22  however, that he made this assumption without any analysis of

23  the litigation risks associated with Acthar.  Debtors also

24  highlight that the private plaintiffs have claimed damages of

25  over $10 billion.

1        Third, the debtors point out that Mr. Jeffers

2   under values the non-litigation liabilities that would remain

3   with Specialty Brands in his hypothetical spin-off.

4   Specifically, Mr. Hayes testified that if the restructuring -

5   - that if restructuring costs including administrative and

6   priority claims, trade creditor claims, general unsecured

7   claims, milestone payments, and severance costs were

8   considered it would result in a $450 to $475 million

9   reduction in value.

10        Fourth, the debtors point out that Mr. Jeffers

11   failed to take into account a $650 million state Medicaid

12   rebate claim relating to Acthar which is subject to possible

13   troubled damages that will have to be settled to avoid the

14   possibility of the entire enterprise losing its Medicaid

15   qualification.  Losing that qualification would result in

16   additional significant losses to the debtors.

17        The debtors also take issue with the inputs used

18   by Mr. Jeffers in performing his DCF analysis.  This is the

19   only analysis performed by Mr. Jeffers in providing his

20   opinion.  This includes using outdated company projections

21   that did not account for the negative news regarding

22   Terlipressin, a new drug in development by Mallinckrodt, that

23   would, according to Mr. Hayes, result in hundreds of millions

24   of dollars in reduced revenues.

25        Also, Mr. Jeffers terminal value calculation,

1  which accounts for seventy-five percent of the value he

2  ascribes to Specialty Brands, is not based upon the recent

3  growth rate experienced by the debtors, which is negative,

4  but instead on his own assumption that the debtors business

5  will grow at what he described as the current inflation rate

6  of 2.5 percent.  Mr. Jeffers did not provide any basis for

7  this assumption and the debtors note that he used an

8  incorrect inflation rate.  Correcting for these errors would

9  result in a decrease in Mr. Jeffers valuation by hundreds of

10  millions of dollars.

11        The bottom line is that Mr. Jeffers expert

12  analysis failed to convince me that there is a substantial

13  likelihood that equity security holders will receive a

14  meaningful recovery in these cases.  Indeed, when correcting

15  for the unreasonable assumptions made by Mr. Jeffers in his

16  analysis and the errors in his DCF calculation it becomes

17  apparent that the debtors are, in fact, hopelessly insolvent.

18        In addition, Mr. Hayes testified that the debtor's

19  unguaranteed notes are currently trading at .075 cents on the

20  dollar and the secured notes are trading at 35 cents on the

21  dollar.  While not definitive it certainly provides an

22  indicator of Mallinckrodt's insolvency, see In Re Williams

23  Communication Group, Inc., 281 B.R. 216, Bankruptcy Southern

24  District of New York 2002.

25        In addition, Mr. Hayes testified that a standalone

1 brands business would not be feasible.  Specifically, Mr.

2 Jeffers modeled these $5.8 billion at debt at brands with an

3 assumed interest rate of 10 percent based on Mr. Jeffers

4 assumption that Mallinckrodt would emerge as a B rated

5 company which would be more than the unlevered free cash in

6 his model.  Mr. Jeffers, on the other hand, did not provide a

7 feasibility opinion in connection with his testimony.

8        Based upon the evidence presented at the hearing

9 on the motion I conclude not only have the movants failed to

10 carry their burden of proving that they have a substantial

11 likelihood of a meaningful recovery, but it appears that the

12 debtors are hopelessly insolvent.  Therefore, appointment of

13 an equity committee would be unjustified because the

14 shareholders have no economic interest in these cases, see

15 Exide Technologies 2002 Westlaw, 323320001 and In Re

16 SunEdison 556 B.R. 94 at 103 to 104, Bankruptcy Southern

17 District of New York 2016.

18        Moreover, any possible hope of solvency would be

19 conditioned upon the ability of the debtors and the unsecured

20 creditors committee to silo all opioid related liabilities in

21 the generics business.  Based upon the evidence introduced at

22 the hearing this is, indeed a very thin read.  Even if

23 possible the remaining liabilities at the brands business

24 would still mean that Mallinckrodt is insolvent; however, as

25 the debtors note there are other constituencies who would

1 have the same interest in reducing or eliminating those

2 potential liabilities including the unsecured creditors

3 committee and the ad hoc committee of noteholders.

4         Moreover, there was no evidence submitted at the

5 hearing that would lead me to conclude that the ad hoc group

6 is incapable of representing the interest in these cases,

7 their interest in these cases.  The group has competent and

8 experienced counsel capable of insuring those interests are

9 protected and if they are successful in providing a

10 substantial contribution to the estates they have the option

11 of asking for compensation, see Williams Communication at

12 223.

13         For these reasons the motion to appoint an

14 official committee is denied. The debtors should submit an

15 appropriate form of order.

16         Any questions?

17     (No verbal response)

18         THE COURT:  All right.  Anything else for today

19 then?

20         MR. MERCHANT:  I believe that is everything, Your

21 Honor. Thank you for your time.

22         THE COURT:  All right.  Thank you all very much.

23         Do we have anymore hearings before the end of the

24 year?  I don't think so.  I wish everyone happy holidays and

25 a happy new year.  I will see you all sometime next year.

1        (A Chorus of "Thank you, Your Honor")

2            THE COURT:  We're adjourned.

3        (Proceedings conclude at 11:15 a.m.)

4

5

6                        CERTIFICATE

7

8      I certify that the foregoing is a correct transcript

9  from the electronic sound recording of the proceedings in the

10 above-entitled matter.

11 /s/Mary Zajaczkowski              December 23, 2020

12 Mary Zajaczkowski, CET**D-531

13

14

15

16

17

18

19

20

21

22

23

24

25